526 So.2d 846 (1988)
Eugenia Grace MARTYNIUK
v.
DL-MUD, INC., David L. Bush, and Highlands Insurance Company.
No. 87 CA 0381.
Court of Appeal of Louisiana, First Circuit.
May 17, 1988.
C. Daniel Street, Monroe, for plaintiff-appellant.
*847 John Michael Parker, Baton Rouge, for defendants-appellees.
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
This is a suit for damages arising out of an automobile accident near the intersection of U.S. Highway 190 and Rougon Road in West Baton Rouge Parish, Louisiana. At this intersection, U.S. Highway 190 is a four-lane, divided highway. Rougon Road intersects U.S. Highway 190 from the north to form a T-intersection.

FACTS
On October 4, 1985, at approximately 7:25 p.m., David L. Bush was operating a 1979 International flatbed truck owned by DL-Mud, Inc. Bush was heading east on U.S. Highway 190 and had stopped the flatbed truck in the inside eastbound lane of U.S. Highway 190 at the intersection with Rougon Road, waiting for an opening in the oncoming westbound traffic to negotiate a left turn onto Rougon Road.
At approximately the same time, plaintiff, Eugenia Grace Martyniuk, was driving her automobile in the inside eastbound lane of U.S. Highway 190 toward the intersection with Rougon Road. Plaintiff was traveling at approximately 62 mph and was following a van. When the van approached the flatbed truck from the rear, the van, suddenly and without warning, swerved into the outside eastbound lane and passed the flatbed truck. Plaintiff, however, was unable to change lanes or timely stop her vehicle and struck the rear of the flatbed truck.
On April 29, 1986, plaintiff filed suit for damages against David L. Bush, DL-Mud, Inc., and Highlands Insurance Company. After plaintiff completed the presentation of her evidence at trial, defendants moved for an involuntary dismissal under LSA-C. C.P. art. 1672. The trial judge granted defendants' motion and dismissed plaintiff's suit.
From this adverse judgment, plaintiff appeals, assigning the following specification of error:
The trial judge erred in finding that plaintiff failed to prove any negligence on the part of defendants and in granting defendants' motion for involuntary dismissal.
Defendants answered plaintiff's appeal, requesting damages for frivolous appeal.
MOTION FOR INVOLUNTARY DISMISSAL
LSA-C.C.P. art. 1672(B) provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
The standard to be applied by the trial court under LSA-C.C.P. art. 1672(B), when a motion for judgment of dismissal is filed at the completion of the plaintiff's case, is that the trial judge must weigh and evaluate all of the evidence presented up to that point in the trial and grant dismissal if the plaintiff has not established proof by a preponderance of evidence. Dugas v. Fontenot Motors, Inc., 510 So.2d 1374 (La.App. 3rd Cir.1987); Comeaux v. Lyons, 505 So. 2d 276 (La.App. 3rd Cir.1987), writ denied, 508 So.2d 822 (La.1987); Financial Corporation v. Estate of Cooley, 447 So.2d 594 (La.App. 3rd Cir.1984). Great weight must be given to the factual conclusions arrived at by the trier of fact and reasonable inferences of fact should not be disturbed absent a showing of manifest error. Cadiere v. West Gibson Products Company, Inc., 364 So.2d 998 (La.1978); Dugas v. Fontenot Motors, Inc., supra; Mariano v. Tanner, 497 So.2d 1066 (La.App. 5th Cir.1986), writ denied, 501 So.2d 235 (La.1987).
*848 The trial judge found that the rear lights on defendants' vehicle were not visible from 1000 feet as required by LSA-R.S. 32:301 and 304(A).[1] However, the trial judge also determined that defendants' failure to properly illuminate the vehicle did not cause the accident.
The issue before this court is whether plaintiff established by a preponderance of evidence that defendants' negligence caused her injuries.
Under a duty/risk analysis, the pertinent inquiries are:
I. Whether the conduct of which plaintiff complains was a cause in fact of the harm;
II. Whether there was a duty on the part of the defendant which was imposed to protect against the risk involved;
III. Whether there was a breach of that duty; and
IV. Damages.
Vicknair v. Hibernia Building Corp., 479 So.2d 904 (La.1985); Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La. 1984); Eldridge v. Downtowner Hotel, 492 So.2d 64 (La.App. 4th Cir.1986).
A defendant's conduct is actionable under the duty/risk analysis where it is both a cause in fact of the injury and a legal cause of the harm incurred. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Fowler v. State Farm Fire & Casualty Insurance Co., 485 So.2d 168 (La.App. 2nd Cir.1986), writ denied, 487 So.2d 441 (La. 1986); South Central Bell Telephone Company v. Hartford Accident & Indemnity Company, 385 So.2d 830 (La.App. 1st Cir.1980), writ denied, 386 So.2d 356 (La. 1980). The cause in fact test requires that but for the defendants' conduct, the injuries would not have been sustained. The legal cause test requires that there be a substantial relationship between the conduct complained of and the harm incurred. Sinitiere v. Lavergne, supra; Fowler v. State Farm Fire & Casualty Insurance Co., supra.
A violation of safety statutes constitutes civil negligence, but is actionable only when it is shown that failure to follow a statute was a legal cause of the accident. Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970); Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962); Robinson v. Allstate Insurance Company, 424 So.2d 322 (La.App. 1st Cir.1982), writ denied, 430 So.2d 76 (La.1983).
In the instant case, David L. Bush, driver of the flatbed truck, was called by plaintiff under cross-examination. Bush testified that on the evening of October 4, 1985, he was headed east in the inside lane of U.S. Highway 190, preparing to make a left turn onto Rougon Road, when he was rear-ended by plaintiff. Bush stated that his head lights were on and that he had engaged his left turn signal when he observed the vehicle behind him move into the outside lane. He recalled hearing a braking noise and then feeling the impact of plaintiff's vehicle.
*849 Plaintiff testified that on the evening of the accident she was traveling in the inside eastbound lane of U.S. Highway 190 at approximately 62 mph and was following a van. As she neared the intersection with Rougon Road, plaintiff was approximately fifty feet behind the van when she observed it suddenly veer into the outside eastbound lane. When plaintiff looked back to her lane, she observed the outline of a truck, but could not see any taillights or a rear blinker on the truck. She immediately applied her brakes and slammed into the rear of the truck. In responding to questions by the trial judge, plaintiff testified as follows:
Q. Well, I mean if he had double bright taillights rather than just regular taillights, or under-lighted taillights? Would that have caused you to stop any quicker?
A. No, sir, I think I stopped as fast as I could for the given circumstances, which obviously wasn't quite fast enough because I hit him.
Q. You would have hit him anyway even if his lights wouldn't have been dirty?
A. I don't know, I just don't know, I cannot answer that. As far as, certainly, if I could or could not.
Q. Well, you couldn't see it before the van moved over, regardless?
A. No, sir, I could not see it before the van moved.
Plaintiff testified that after the impact, she was still unable to observe any taillights on the truck and that there was nothing she could have done to avoid the accident.
Plaintiff's mother, Johnnie B. Tubbs, was a passenger in the front seat of plaintiff's vehicle. Mrs. Tubbs testified that, after the van moved into the outside lane, she and her daughter first observed the truck, but could not see any illumination from the taillights or the left rear blinker. Mrs. Tubbs also noted that as soon as they observed the truck, the brakes were applied.
Two police officers also testified. Carey Gueho of the Livonia Police Department was stopped on Rougon Road at the intersection with U.S. Highway 190 and witnessed the accident. From his position, Gueho saw the left front blinker and side lights of the truck, which was stopped on U.S. Highway 190 waiting to turn left onto Rougon road. Prior to the impact, Gueho observed several vehicles on U.S. Highway 190 change lanes to go around the truck. After the impact, he observed the rear lights on defendants' truck and found both taillights visible and operational at a distance of 150 feet. Trooper James C. Mitchell investigated the accident for the Louisiana State Police. Trooper Mitchell testified that the truck's taillights were somewhat dim and did not comply with the 1,000-foot illumination requirement. However, Trooper Mitchell admitted that the taillights were visible for 405 feet behind the truck and the left rear blinker was visible beyond that distance. Further, he measured the skid marks left by plaintiff's vehicle at 86 feet. Trooper Mitchell also noted that two clean reflectors were mounted above the taillights and that plaintiff's headlights should have illuminated the truck at a couple of hundred feet.
The trial judge determined that the illumination of the lights on defendants' truck was below the standard required by the law. The trial judge also determined that this safety violation did not cause the accident.[2] We agree. After thoroughly reviewing *850 the record, we find that plaintiff failed to present evidence to establish, by a preponderance of evidence, that defendants' negligence caused her injuries. Accordingly, the trial judge did not err in granting defendants' motion for involuntary dismissal and dismissing plaintiff's suit.

DAMAGES FOR FRIVOLOUS APPEAL
Defendants contend that they are entitled to an award of damages for frivolous appeal pursuant to LSA-C.C.P. art. 2164. This statute is penal in nature and must be strictly construed. Fernon v. Jordan, 472 So.2d 247 (La.App. 1st Cir.1985); Salmon v. Hodges, 398 So.2d 548 (La.App. 1st Cir.1979). Appeals, however, are favored and damages for frivolous appeal are not granted unless they are clearly due; e.g., when there are no serious legal questions, when it is manifest that the appeal is taken solely for the purpose of delay, or when it is evident that appellant's counsel is not serious in advocating the view of law which he represents. Fernon v. Jordan, supra; Salmon v. Hodges, supra.
In the instant case, defendants have not established that this appeal is frivolous. Although we find that the plaintiff's arguments are without merit, a serious question concerning causation is involved, and damages are clearly not warranted in this case.

CONCLUSION
For the above reasons, the judgment of the trial court dismissing plaintiff's suit is affirmed. Plaintiff is cast for all costs.
AFFIRMED.
NOTES
[1] LSA-R.S. 32:301 provides as follows:

Every vehicle upon a highway within this state at any time between sunset and sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of 500 feet ahead, shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles subject to exception with respect to parked vehicles.
LSA-R.S. 32:304(A) provides as follows:
Every motor vehicle, trailer, semi-trailer and pole trailer and any other vehicle which is being drawn at the end of a train of vehicles, shall be equipped with at least one tail lamp mounted on the rear, which, when lighted as hereinbefore required in R.S. 32:301, shall emit a red light plainly visible from a distance of one thousand feet to the rear, provided that in the case of a train of vehicles only the tail lamps on the rearmost vehicle need actually be seen from the distance specified. And further, every such above mentioned vehicle, other than a motorcycle or motor driven cycle registered in this state and manufactured or assembled after December 31, 1962, shall be equipped with at least two tail lamps mounted on the rear, on the same level and as widely spaced laterally as practicable, which, when lighted as herein required, shall comply with the provisions of this section.
[2] In his oral reasons for judgment, the trial judge explained his reasoning as follows:

THE COURT: Let's look at it this way and see what he did wrong.
He was sitting at an intersection on a four-lane highway, 190 and Rougon Road, which is a proper place to turn. He had stopped, he could not turn left because of oncoming traffic. Up to that point he hasn't done anything wrong as far as his actions are concerned.
The only thing that I could ever say that he has done wrong was not clean his taillights. He's got a right to turn there.
MR. STREET: Yes, sir. Oh, I agree with that.
THE COURT: You can't place fault on him for stopping the vehicle and turning
MR. STREET: That's right, I agree with that.
THE COURT: off the highway onto the Rougon Road. The only thing that you can say about him that's wrong is something with his vehicle that either the light was not bright enough or he failed to clean it, the lens on the rear light. Is that correct?
MR. STREET: Yes, sir, and they had a grate also over it.
THE COURT: That's true. The next thing to see is if that causes the accident. It would seem to meI may be incorrectthat if she was four hundred and five feet, more than four hundred and five feet, and couldn't see, she would have to skip the four hundred and five feet and hit him immediately without having seen his lights.
Do you catch what I'm saying.
Anyway, inside that four hundred and five feet she should have been able to see some light, according to the trooper, if she was looking ahead of her. She had a van in front of her and she couldn't. Now, is that this guy's fault, that the van was in front of her. No. Can we move the van out the way and she's probably within a hundred feet of his vehicle. Is that correct?
MR. STREET: Yes, sir.
THE COURT: She's one-fourth of the distance that that light was seen from. So obviously she could see it, and I would venture to guess that she can see more than four times the amount of light because it's not linear progression on light. It's square; sixteen times more light at that area than there is at the four hundred-foot mark. Assuming it's the same, it's four times as much light.
She should have been able to see it at a hundred feet. The problem comes, had she seen it at a hundred feet and the van moved out of the way she couldn't have stopped anyway. So whether he had his lights on or not was not the cause of the accident. That's why I asked her the question, had he had double bright taillights on, would she have been able to stop. No.
MR. STREET: Yes, sir, but the only other inference about the van moving, the only inference that the Court can draw about the van moving is because they couldn't see the lights either. And we don't know who they are so we couldn't call them to testify.
THE COURT: No, but that's a part of the proof problem. But if you can see them at four hundred you can also assume the same thing that occurred in her place. She might have not been looking. The guy in the van might have not been looking. He might not have been paying attention, he might have been looking to his right to see if he could get out of that lane. Or maybe that was the first chance he got to pull over. I can't suppose things, and I have to go on what's on the record.
And her answer to the statement was she couldn't stop if he had double bright lights. If that's the case the weakness of his lights was not the cause of the accident. Unless my logic is wrong I can't see him being at fault. I don't have any evidence; the evidence shows the opposite. It shows that she couldn't stop regardless of what the lights would have been. And he had every right to be where he was. It's unfortunate, and there's nothing I can do about it. I go by what the law is and what the evidence shows.