542 So.2d 568 (1989)
Woodrow WILSON and Mary Wilson
v.
Huey J. WILSON and H.J. Wilson Company, Inc.
No. 88 CA 0330.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
*569 Thomas E. Balhoff, Baton Rouge, for plaintiffs-appellants Woodrow Wilson and Mary Wilson.
Robert E. Barkley, Jr., New Orleans, for defendants-appellees Huey J. Wilson and H.J. Wilson Co., Inc.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SAVOIE, Judge.
This is a suit to recover a certain number of shares of stock in H.J. Wilson Co., Inc.[1] Plaintiffs, Woodrow E. Wilson[2] and his wife, Mary Catherine McLin Wilson, appeal the judgment of the trial court in favor of the defendants, H.J. Wilson Co., Inc. and Huey J. Wilson.

FACTS
Huey J. Wilson (Huey), the founder of and principal stockholder in H.J. Wilson Co., Inc. (Company), incorporated his first store in Baton Rouge, Louisiana in 1958. Huey opened a second store, which was separately incorporated in 1961, in Jackson, Mississippi. In early 1965, a third store, also incorporated separately, was opened in *570 Gulfport, Mississippi. The Company operated a chain of catalog showrooms.
The shares of stock of the Baton Rouge store were owned by Huey and his wife Angelina (except for a small number of shares not involved in the present suit). Huey and his wife owned all of the shares of stock of the Gulfport store. Huey held 600 of the 800 outstanding shares of the Jackson store with 100 shares each owned by Huey's brothers, Woodrow and George, who each contributed $10,000 to the Jackson store when it began operation.[3]
In 1965, Huey decided to reorganize the three stores into one corporation for purchasing, financing and accounting purposes. On July 1, 1965, a stock-for-stock agreement, which set forth the terms of the reorganization, was executed by the former shareholders. Under the terms of the agreement, all shares of the three stores were acquired by a holding company known as Wilco, Inc. and in return the stock of Wilco, Inc. was issued to the shareholders. The reorganization was structured upon the respective book values of the three stores as shown in financial statements at that time. Woodrow and George were each issued 202 shares of Wilco stock in exchange for their shares in the Jackson store. Alvin W. Wilson received one share, Angelina was issued 593 shares and the remaining 3,058 shares were issued to Huey.[4]
On February 24, 1970, two new stock certificates were issued to Woodrow for 123 shares and 79 shares, both certificates totaling 202 shares. Woodrow did not turn in the Wilco certificate for 202 shares for cancellation. On that same date, the certificate for 79 shares was endorsed by Woodrow to Huey. Woodrow claims this assignment of the certificate was fraudulently obtained by Huey. Then, on February 15, 1971, 35 shares of the 123 share certificate were endorsed by Woodrow to Huey. Woodrow claims this assignment of the 35 shares was fraudulently obtained by Huey. Huey claims that the transfers of these shares were to adjust the stock distribution so as to more accurately reflect the relative values of the Baton Rouge and Jackson stores at the time of the reorganization.
On February 24, 1971, the three subsidiary companies were merged into a holding company and the name of the corporation was changed to H.J. Wilson Co., Inc. At the same time, a reclassification of the Company's stock was approved, resulting in a 203 for 1 stock split to shareholders of record as of the close of business on February 15, 1971. The Company's books as of said date reflect Woodrow's ownership interest as being 88 shares instead of 202 shares, which Woodrow claims. Thereafter, on April 1, 1971, Woodrow was sent a stock certificate of the new corporation for the number of shares equivalent to the 88 shares. In June of 1971, the Company made a public offering of stock. During 1972, Huey retransferred to Woodrow the 35 shares which had been transferred to Huey on February 24, 1970. Huey refused to have any additional shares issued to Woodrow.
On February 25, 1980, Woodrow filed the present suit in the 19th Judicial District Court and a companion federal suit, based upon the federal securities laws, in the Middle District of Louisiana, seeking recovery of the 79 shares or their value. At a status conference in the state suit in May, 1981, the trial judge decided to take no further action in the matter pending the decision in the federal case. By agreement of the parties, the federal suit was tried to the court alone only on the issue of prescription.
Judge Parker, in written "findings of fact and conclusions of law" held that the *571 applicable prescriptive period was two years and found that Woodrow was aware of enough facts to further investigate his claim at least in 1972, and thus decided that the federal securities claim under Rule 10b-5 had prescribed since it had been brought long after the two year period had run in 1974.[5] Judge Parker, however, expressly declined to exercise pendent jurisdiction over the state claims and dismissed them without prejudice to plaintiffs' right to pursue those claims in the companion state suit. Judgment was rendered on April 9, 1982 and was not appealed.
Thereafter, on June 14, 1982, defendants filed exceptions of res judicata, collateral estoppel, prescription, no cause of action, no right of action and motions for summary judgment in this suit. Defendants claimed that Judge Parker's April 16, 1982 "findings of fact" should have been given res judicata and collateral estoppel effect, and further claimed that the state claims were grounded in fraud and the appropriate prescriptive period was one year. Defendants also claimed that the Louisiana stock transfer statute, LSA-R.S. 12:624, did not afford plaintiffs a cause of action and that the fiduciary provisions of the Louisiana business corporation statute, LSA-R.S. 12:91, could not be brought by plaintiffs alone but instead could only be brought as a shareholder's derivative action.
The federal court record, including all depositions and the trial transcript of the January 26, 1982 proceeding on the issue of prescription, was introduced and filed of record by consent of the trial court and both counsel.
On June 25, 1982, the trial court heard oral argument on all the exceptions and motions based upon the federal court record, without additional testimony. At the conclusion of oral argument, the trial court maintained defendants' exceptions of collateral estoppel, prescription, no cause of action under LSA-R.S. 12:624 and no right of action under LSA-R.S. 12:91. Judgment was entered on July 1, 1982.
An appeal was taken by plaintiffs and this court reversed the trial court on all counts. Wilson v. H.J. Wilson Co., Inc., 430 So.2d 1227 (La.App. 1st Cir.1983).[6] The case was remanded for a final determination on the merits. Defendants reurged their motion for summary judgment and exception of res judicata which the trial court had not ruled upon when initially urged on June 25, 1982 prior to the first appeal.
On November 30, 1984, the trial court heard oral argument on defendants' motion for summary judgment and exception of res judicata. Judgment was entered on December 17, 1984, dismissing the exception of res judicata and granting defendants' motion for summary judgment. Again, an appeal was taken by plaintiffs and this court reversed the trial court on the motion for summary judgment, upheld the dismissal of the exception of res judicata, and remanded for trial by jury. Wilson v. H.J. Wilson Co., Inc., 492 So.2d 54 (La. App. 1st Cir.), cert. denied, 496 So.2d 355 (La.1986).

ACTION OF THE TRIAL COURT
On August 4 through 7, 1987, this case was tried to a twelve person jury. At the conclusion of trial the jury answered written interrogatories and concluded by a vote of 9 to 3 that "there [was] valid consent when Woodrow Wilson signed the certificate for 79 shares of Wilco stock to Huey Wilson on February 24, 1970." Judgment was entered on September 1, 1987.
Plaintiffs filed this devolutive appeal on October 5, 1987 and assigned the following specifications of error:
1. The trial court erred in refusing to permit plaintiffs to call George Wilson as a witness to testify concerning a similar, in fact identical, transaction occurring on the same date as the one at issue for the *572 purpose of demonstrating Huey Wilson's improper purpose, design or state of mind.
2. The trial court erred in refusing to permit plaintiffs to call Professor F. Hodge O'Neal, a law professor, as an expert witness in the field of corporation law and closely held corporations to testify concerning normal and customary practices and procedures for stock transfers and for lost certificates in closely held corporations.
3. The trial court erred in refusing to charge the jury with plaintiffs' proposed jury charges numbers 23, 24, 25, 26 and 27 concerning the obligation owed by the Company to registered shareholders, and specifically to Woodrow E. Wilson in this case, to require the endorsement and delivery of the shareholder's original stock certificate, Wilco stock certificate no. 8 in this case, or to require a lost certificate affidavit in lieu thereof, prior to transferring the shares of stock represented by the original stock certificate.

ASSIGNMENT OF ERROR NO. 1
Plaintiffs argue that the trial court erred in excluding the testimony of George Wilson. Plaintiffs objected to the exclusion of George Wilson's testimony on the basis that his testimony was admissible as evidence of a similar occurrence or transaction.
Evidence of similar frauds is admissible in an action for fraud in which scienter, motive or intent is an essential element of fraud and the right to relief depends upon establishing scienter, motive or intent. 37 Am.Jur.2d Fraud and Deceit § 456 (1968). Defendants claim that Huey Wilson's intent, purpose or state of mind was not an issue in this case. We disagree. Two elements are essential to constitute legal fraud: the intention to defraud and loss or damage, or the strong possibility thereof. Hoover v. Mid-South Exploration Co., 479 So.2d 551 (La.App. 1st Cir. 1985). (Emphasis ours).
Although similar act evidence may be admitted to show fraudulent intent, there must be proof that the same party did in fact commit a similar fraud. "The law seems to be well settled that in civil cases, where fraud is an issue, evidence of other fraud of like character, committed by the same party, at or about the same time, is admissible to indicate a scheme, plan or design on his part broad enough to include the act in question." Culbertson v. JNO McCall Coal Co., 275 F.Supp. 662 (S.D.W.Va.1967) (Emphasis ours). Therefore, in order for the similar transaction testimony to be admissible in the present case, the testimony of George must clearly establish that he was defrauded by Huey.
We have closely examined the proffered testimony of George and his testimony did not establish that George was defrauded by Huey. George did not know of any facts constituting fraud and his sparse knowledge of the transaction does not give rise to fraud. George's testimony is inadmissible on the basis that plaintiffs did not offer proof of a fraud committed by Huey.
Additionally we find that although there are some similarities between the transactions, there are significant differences that also preclude the admissibility of George's testimony. George testified that the $10,000 given by him to Huey for the Jackson store was a loan to Huey. Woodrow testified that the $10,000 given by him to Huey was an investment and not a loan. George, unlike Woodrow, testified that he was aware that Huey was thinking about going public when he signed the papers. George testified that Huey and Stanley Villavaso, the Company's internal accountant, were both present when he signed the papers. Woodrow testified that neither Huey nor Stanley were present when he signed the papers. George signed and turned in his original stock certificate for 202 shares to Huey. Woodrow never turned his original certificate in to Huey. And, George, unlike Woodrow, never claimed that Huey defrauded him and never filed suit against Huey.
Our review of the record convinces us that the trial court was correct in excluding the testimony of George Wilson. This assignment of error is without merit.

*573 ASSIGNMENT OF ERROR NO. 2
Plaintiffs' claim that the trial court erred in refusing to allow the expert witness testimony of Professor F. Hodge O'Neal. Professor O'Neal is one of the leading authorities on closely held corporations and was tendered by the plaintiffs as an expert in the field of corporation law and closely held corporations. Plaintiffs contended that Professor O'Neal's testimony would be of a factual nature relating to customary procedures of closely held corporations and that it would not involve questions of law. The trial court excluded the testimony on the basis that "testimony by an expert as to what he feels the law is, either statute law or custom law, is not relevant,..."
A trial judge has broad discretion in determining who should or should not be permitted to testify as an expert and whether expert testimony is admissible; his judgment will not be disturbed on appeal unless manifestly erroneous. Schwamb v. Delta Air Lines, Inc., 516 So.2d 452 (La.App. 1st Cir.1987), cert. denied, 520 So.2d 750 (La.1988). We have closely examined the proffered testimony of Professor O'Neal and find that the majority of his testimony consisted of legal opinions and conclusions of law. The testimony of an expert, with the attendant right to express opinions and conclusions, is proper for the purpose of assisting the court only in those fields in which the court lacks sufficient knowledge to enable it to come to a proper conclusion without such assistance. Clesi, Inc. v. Quaglino, 137 So.2d 500 (La.App. 4th Cir.1962). The domestic law testimony of an expert is not proper, as distinguished from foreign law testimony, on the theory that the court itself is the expert on domestic law. Id. We find that the trial court was correct in excluding the testimony of Professor O'Neal.
In addition to legal opinions, Professor O'Neal's proffered testimony related to the customary procedures of closely held corporations. We find this testimony irrelevant and not helpful to the jury's understanding of corporate procedures because: "[t]he traditional formalities of corporate operation are often not observed in close corporations. In many close corporations and this is especially true in family corporationsshareholders' and directors' meetings are not held and the traditional corporate ritual is disregarded." 2 F.H. O'NEAL & R.B. THOMPSON, O'NEAL'S CLOSE CORPORATIONS § 8.02 (3rd ed. 1987) (Footnote omitted).
Professor O'Neal's proferred testimony echoed the opinion stated in his treatise:
Q. I understand. Is it true that family held and close corporations are more likely not to follow all of the normal and customary procedures you've been talking about than would, for example, General Motors?
A. Yes.
Q. All right.
A. It is true that they do not always follow the procedures and indeed it's they are very careless about keeping records and following rituals. (Vol. 7, R. 1347).
For the reasons afore discussed, we find this assignment of error without merit.

ASSIGNMENT OF ERROR NO. 3
Plaintiffs claim that the trial court's refusal to charge the jury with plaintiffs' proposed jury charges, numbers 23-27, constituted reversible error. Plaintiffs' proposed jury charges numbers 23-27 were directed to the corporation's independent obligations to its own shareholders in the area of stock transfers. Article 1793(C) of the Louisiana Code of Civil Procedure states in pertinent part:
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
*574 The record indicates that plaintiffs objected to the trial court's refusal to give plaintiffs' proposed jury charges numbers 23-27 immediately after the jury retired. However, plaintiffs did not state the grounds of their objections.
Plaintiffs in brief contend that: "[t]he grounds for plaintiffs' counsel's objections were self-evidenthe believed his proposed instructions to be a correct statement of the law relevant to the corporation's independent duty to shareholders in general and to Wilco's shareholder, Woodrow Wilson, in particular." Plaintiffs base this contention on the fact that the proposed instructions were supported by citations of applicable case and statutory law and that the trial court was provided with copies of every case and statute cited in the proposed instructions. Plaintiffs further claim that the trial court "understood precisely what plaintiffs' counsel believed to be a correct statement of the law, ..." Despite plaintiffs' counsel's contention that the trial court knew what the grounds for his objections were, he stated no grounds for his objections on the record. It is unnecessary for us to determine if the trial court understood the grounds for plaintiffs' objections. The appellate court must act only on what is contained in the record. LSA-C. C.P. art. 2164. Clearly, the record does not contain any basis or grounds for plaintiffs' objections.
Our jurisprudence has consistently held that an objection to the trial court's instructions to jurors, without assignment of any reasons whatsoever, does not comply with LSA-C.C.P. art. 1793. Lea v. Baumann Surgical Supplies, Inc., 321 So.2d 844 (La. App. 1st Cir.1975), writ denied, 325 So.2d 279 (La.1976). To preserve his right to appeal an erroneous jury instruction, a litigant must enter in the record the specific matter to which the objection is made and the grounds therefor. Id.
Plaintiffs failed to preserve their right to appeal this issue by failing to state the grounds for their objections to the trial court's refusal to charge the jury with plaintiffs' proposed jury charges numbers 23-27. Consequently the objection was waived. Accordingly, we find plaintiffs' third assignment of error without merit.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at plaintiffs' costs.
AFFIRMED
SHORTESS, J., concurs in the result.
NOTES
[1] H.J. Wilson Co., Inc. was sold to Service Merchandise Company of Nashville, Tennessee in 1985. H.J. Wilson Co., Inc. became a publicly held company in June 1971, but prior to that time it was a closely held corporation known as Wilco, Inc.
[2] Woodrow Wilson died prior to the start of trial and his heirs were substituted as parties plaintiff. Woodrow's testimony was introduced at trial through use of two pretrial discovery depositions which were edited for trial purposes.
[3] Woodrow testified that the $10,000 was an investment. However, Huey testified that the $10,000 was essentially a loan because Woodrow could get his money back at a fair rate of return any time.
[4] An additional 160 shares issued in Woodrow's name at the time of the Stock-for-Stock Agreement were shown but were considered by both brothers as security for a $10,000 loan by Woodrow to Huey. Woodrow never actually received a certificate. The loan was repaid before the end of 1965, and the 160 shares were transferred on the books of the corporation to Huey.
[5] Wilson v. H.J. Wilson Co., No. 233,380 on the docket of the United States District Court for the Middle District of Louisiana, decided April 16, 1982, by Judge John V. Parker.
[6] The Louisiana Supreme Court denied defendants' application for certiorari on September 23, 1983. Though unreported, the certiorari denial is part of the record in this case.