571 So.2d 788 (1990)
Mrs. Geraline S. MORRISON, Plaintiff/Appellant,
v.
Dr. Jerry JOHNSTON, Defendant/Appellee.
No. 21,963-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1990.
Writ Denied February 8, 1991.
*789 Jack Wright, Jr., Monroe, for plaintiff-appellant.
Mayer Smith & Roberts by Ben Marshall, Jr., Shreveport, Dawkins, Coyle and Carter by Robert Dawkins, Ruston, for defendantappellee.
Before MARVIN, LINDSAY and HIGHTOWER, JJ.
LINDSAY, Judge.
In this case of alleged dental malpractice, the plaintiff, Geraline S. Morrison, appeals from a judgment rejecting her claim for damages against the defendant, Jerry Johnston, D.D.S. We affirm.

FACTS
The plaintiff had been Dr. Johnston's patient for several years. In July, 1986, the plaintiff went to Dr. Johnston for treatment *790 of a broken tooth. It was determined that another tooth, located behind the broken tooth was decayed and needed to be filled. It was also determined that a crown was necessary for a proper repair of the broken tooth. The latter procedure required taking a series of four impressions from which to make the crown. Dr. Johnston gave the plaintiff a local anesthetic by injection and filled the decayed tooth. Dr. Johnston then prepared the broken tooth for the crown. After the broken tooth was prepared, Dr. Johnston's dental assistant, Ms. Dottie Smith, took three preliminary impressions, as well as a final impression for making the crown.
The plaintiff contends that the dental assistant, while taking the final impression, allowed the material in the final impression tray to set up too long requiring the use of great force to remove the tray from the plaintiff's mouth. However, plaintiff testified that she suffered no pain or noticeable discomfort during the procedure.
The plaintiff contended that after she went home and the anesthetic wore off, she began having severe pain in her jaw. She went back to Dr. Johnston who determined that she had temporomandibular joint disorder (TMJ). In other words, the plaintiff's temporomandibular joint had slipped out of place. The defendant treated the plaintiff for this problem with an intraoral splint, a type of dental appliance worn inside the mouth. This device is designed to relieve the pressure on the temporomandibular joint and thus aid in alleviating the pain associated with TMJ.
Thereafter, the plaintiff sought treatment from several other dentists who fitted her with a variety of intraoral splints. These measures failed to adequately relieve the plaintiff's discomfort. Ultimately, the plaintiff underwent treatment to realign her jaw. This treatment required wearing braces on the teeth for a period of time in order to realign the teeth and then undergoing surgery in which cuts were made in the jawbone, moving the lower jaw forward to be in line with the top jaw, and wiring the jaws shut for several weeks while the healing process took place. This procedure is designed to correct the malocclusion of the teeth and jaws which puts pressure on the temporomandibular joint and contributes to the development of TMJ.
The plaintiff filed suit against the defendant, contending that the dental assistant's action in removing the impression tray caused the onset of the TMJ. The plaintiff also contended that the regulations promulgated by the State Dental Board prohibit dental assistants from taking final impressions. The plaintiff alleged that the defendant and the assistant were negligent and that their negligence caused the damage to her jaw.
The defendant denied any negligence. He argued that there was a congenital defect in the plaintiff's lower jaw in that it had failed to develop normally and was too short. This caused her teeth to fit together improperly (an uneven bite), placing great pressure on the plaintiff's temporomandibular joint. The defendant claimed this defect caused the plaintiff to have a predisposition to the development of TMJ. The defendant stated that the plaintiff had consulted him in 1984 about her underdeveloped jaw, in an attempt to improve her appearance. Having the underdeveloped jaw caused the plaintiff's front teeth to protrude and the plaintiff desired a more pleasing profile. At that time, the defendant referred the plaintiff to Dr. Jack Gamble, an oral surgeon, for the orthodontic treatment and jaw surgery. After consulting with Dr. Gamble, and upon learning of the extensive procedures necessary to correct her condition and the relatively high cost thereof, the plaintiff declined to undergo the treatment.
The defendant also denied any negligence in allowing the dental assistant to take the impressions. He argued that it is common practice in North Louisiana for dental assistants to take such impressions.
Several pretrial motions were filed in this case. The defendant filed a motion in limine to prohibit the plaintiff from introducing the deposition of Dr. Russell R. DiMarco, the secretary-treasurer of the Louisiana Board of Dentistry, regarding his interpretation of certain regulations promulgated *791 by the Board. The trial court ruled that the deposition could not be admitted at trial.
The defendant also filed a motion for continuance. The defendant sought a continuance to prevent the case from going to trial while the plaintiff was recovering from surgery and while her jaw was still wired shut. This motion was granted by the trial court.
The plaintiff filed a motion in limine to determine the admissibility of her videotaped deposition given while her jaw was wired shut. The trial court allowed the plaintiff to show the entire video portion of the videotaped deposition to the jury. However, the trial court only allowed the presentation of the audio portion of the tape in which the plaintiff stated her name and address.
The case was tried before a jury from October 30 through November 2, 1989. The jury rendered a verdict in favor of the defendant, rejecting the plaintiff's demands. The plaintiff appealed, urging numerous assignments of error.

PRE-TRIAL MOTIONS
The plaintiff has assigned as error the trial court rulings on several pre-trial motions. We find that the trial court's rulings on the motions were correct.

Motion In Limine
The defendant filed a motion in limine, prior to trial, to prevent the plaintiff from introducing the deposition of Dr. Russell R. DiMarco, the secretary-treasurer of the Louisiana Board of Dentistry. The deposition concerned Dr. DiMarco's opinion and interpretation of various rules and regulations promulgated by the Louisiana Board of Dentistry regarding the proper duties of dental assistants. The rule at issue in this case is found in the Louisiana State Board of Dentistry Rules and Regulations, Chapter 5, Section 501B(13)[1].
The rule provides that a dental assistant may only perform certain duties under the direct, on-premises supervision of the employing dentist, including the making of preliminary study model impressions and opposing model impressions.
In ruling on the motion, the trial court stated that these rules and regulations were enacted by the Board of Dentistry under its authority to regulate the practice of dentistry pursuant to LSA-R.S. 37:751 et seq. As to the dental profession, the rules and regulations have the force and effect of law. Therefore, the trial court ruled that it would be improper to introduce a deposition concerning opinions and interpretations of these rules. The plaintiff argues on appeal that the trial court erred in its ruling.
LSA-C.E. Art. 702 provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.
In Pugh, Force, Rault & Triche, Handbook on Louisiana Evidence Law (1990), the authors' notes to this article indicate that testimony in a jury case by a legal expert as to what is or is not the correct statement of domestic law in a given area is not a proper subject of expert testimony because such matters are for the trial judge to decide, subject to review on appeal. The note goes on to say that allowing an expert to expound upon the law to the jury would tend to confuse the issue and the practice is to be avoided. The note then cites Wilson v. Wilson, 542 So.2d 568 (La.App. 1st Cir.1989) which was decided under the prior evidence law. Wilson v. Wilson, supra, was a jury trial involving a suit to recover shares of stock in a corporation. A law professor was tendered as an expert in the law and customs relating to closely held corporations. The testimony was excluded and the court held that a trial judge has broad discretion in determining who should or should not be permitted to testify as an expert, and whether expert *792 testimony is admissible; his judgment will not be disturbed on appeal unless manifestly erroneous. The court went on to find that the testimony of an expert, with the attendant right to express opinions and conclusions, is proper for the purpose of assisting the court only in those fields where the court lacks sufficient knowledge to enable it to come to a proper conclusion without such assistance. The court then concluded that the domestic law testimony of an expert is not proper, as distinguished from foreign law testimony, on the theory that the court itself is an expert on domestic law.
In applying the reasoning of Wilson v. Wilson, supra, to the present case, it is clear that the trial court correctly excluded Dr. DiMarco's deposition. First, Dr. DiMarco was not shown to be a legal expert, but is only an officer on the Louisiana State Board of Dentistry. It is questionable whether, by virtue of holding that office, he is qualified to give a legal interpretation of the rules and regulations regarding the practice of dentistry in this state.
Further, even if Dr. DiMarco was qualified as a legal expert, the rules and regulations are formulated and promulgated in accordance with the mandate of our state law contained in LSA-R.S. 37:760(8).[2] The interpretation of these rules and regulations falls under the purview of domestic law, precluding the necessity for expert testimony. Therefore, we conclude that the trial court did not err in granting the defendant's motion in limine excluding Dr. DiMarco's deposition from evidence at trial.

Motion for a Continuance
The plaintiff underwent surgery to reposition her jaw on May 8, 1988. Trial of this case was originally set for May 30, 1988. The defendant filed a motion for continuance under LSA-C.C.P. Art. 1601 to prevent the case from going to trial while the plaintiff was recuperating from her surgery and while her jaw was still wired shut. The defendant contended that plaintiff's condition would hinder her ability to speak and would make her testimony difficult to understand. The defendant also argued that the plaintiff's appearance so soon after surgery would not be indicative of her true appearance and might unduly prejudice the jury.
The defendant moved for a continuance on discretionary grounds, as set forth in LSA-C.C.P. Art. 1601, which provides:
A continuance may be granted in any case if there is good ground therefor.
It is well settled that the trial court has great discretion in granting or denying a motion for continuance under LSA-C.C.P. Art. 1601 and a trial court's ruling will not be disturbed on appeal in ahe absence of clear abuse. Halley v. Halley, 457 So.2d 108 (La.App. 2d Cir.), writ denied 461 So.2d 316 (La.1984); New Hope Gardens Ltd. v. Lattin, 530 So.2d 1207 (La.App. 2d Cir. 1988).
In the present case, the trial court did not abuse its broad discretion in granting the defendant's motion for continuance. Postponing the trial allowed time for the plaintiff to recover from surgery and allowed the parties the opportunity to obtain a medical assessment of whether the surgery was successful in relieving the plaintiff's problem. At a later time, plaintiff's testimony could be more clearly understood, both her direct testimony and her testimony given on cross-examination. Granting the motion did not prejudice the plaintiff's case, nor did it deprive her of the opportunity to demonstrate to the jury the steps necessary to correct her problem.
*793 The record contains numerous photographs of the plaintiff which were taken prior to surgery, as well as photos taken while the plaintiff was in the hospital immediately after surgery. Photographs were also admitted showing plaintiff's condition after a recuperative period. Further, a videotape of the plaintiff was presented at trial, fully revealing plaintiff's condition (as discussed hereafter), taken soon after her surgery.
Under the facts of this case, we find that the trial court did not err in granting the defendant's motion for continuance.

Admissibility of Videotaped Deposition
Prior to trial, the plaintiff filed a motion in the trial court to determine whether the court would admit a videotaped deposition of the plaintiff given while her jaw was wired shut. The court ruled that the video portion of the tape could be used at trial, but limited the audio portion of the tape to a statement by the plaintiff of her name and address. The court reasoned that, because the plaintiff was present at trial and available to testify, it was not proper to admit the videotaped deposition in its entirety. On appeal, the plaintiff argues that the trial court erred in its ruling. We find no error.
At the outset it should be noted that the video portion of the tape was presented at trial and fully showed plaintiff's condition soon after surgery. The trial court ruling is consistent with LSA-C.C.P. Art. 1450 which provides, in pertinent part:
A. At the trial or upon the hearing of a motion or interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the time of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
1. Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness.
2. The deposition of a party ... may be used by an adverse party for any purpose.
3. The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
(a) that the witness is unavailable, or
(b) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.
In the present case, the deposition was not offered by an adverse party for impeachment or any other purpose. Also, the plaintiff was not unavailable as required LSA-C.C.P. Art. 1450(A)(3)(a). Because the plaintiff was present in court to testify regarding all facets of her claim, including her surgery, the trial court did not err in limiting the audio portion of the deposition.
The plaintiff argues that under Reggio v. Louisiana Gas Service Company, 333 So.2d 395 (La.App. 4th Cir.), writs denied 337 So.2d 187, 526 (La.1976), her videotaped deposition should have been introduced in its entirety to show her condition during the course of treatment in having her jaw wired shut. The trial court's ruling in the present case is not inconsistent with the holding in Reggio v. Louisiana Gas Service Company, supra. In Reggio, the court required the video to be edited to exclude facial grimaces and other depictions of pain. In the present case, the trial court allowed the jury to see the video portion of the tape which showed the plaintiff during her recovery period. The trial court also allowed the first portion of the audio portion of the tape to be played so the jury could observe the plaintiff's difficulties in speaking. However, as noted above, the trial court correctly determined that the plaintiff was present to testify and therefore did not allow her to use the video tape as a means of testifying at trial.
The plaintiff argues that the limitations placed upon the use of the deposition, in *794 not allowing the entire audio portion of the tape to be played, prevented her from portraying to the court her true condition during treatment. The plaintiff argues the trial court ruling in this regard is contrary to the ruling in Cordova v. Allstate Insurance Company, 534 So.2d 543 (La.App. 3rd Cir.1988). This argument is meritless. Cordova v. Allstate Insurance Company, supra, held that the trial court erred in excluding all photographs of a party taken prior to cosmetic surgery. In the present case, the plaintiff was fully allowed by the trial court to present to the jury evidence of her condition before her malady developed, during the treatment, and after treatment was completed.

NEGLIGENCE
The plaintiff argues that the trial court erred in allowing local custom to abrogate written law in determining whether the defendant was negligent in treating the plaintiff. The plaintiff also contends that the jury erroneously concluded that the defendant was not negligent in performing her treatment. These two assignments of error are considered together.
The plaintiff first argues that under the rules and regulations promulgated by the Louisiana State Board of Dentistry, dental assistants may make preliminary impressions of a patient's teeth, but are not authorized to make final impressions. Here, the defendant's assistant, Ms. Dottie Smith, made the final impression. Plaintiff argues that this was a violation of the regulation and amounted to a per se breach of the standard of care required of a dentist.
Plaintiff argues that soon after this dental procedure was performed she developed TMJ. She contends that prior to the onset of her TMJ, she had no problems and was experiencing good health. However, after her dental treatment, the TMJ problem manifested itself and it may therefore be presumed that the dental treatment caused her TMJ and the defendant is liable for her damages.
The issue before this court is whether plaintiff established by a preponderance of evidence that the defendant's negligence caused her injuries.
Under a duty/risk analysis, the pertinent inquiries are:
(1) whether the conduct of which plaintiff complains was a cause in fact of the harm;
(2) whether there was a duty on the part of the defendant which was imposed to protect against the risk involved;
(3) whether there was a breach of that duty; and
(4) damages.
A defendant's conduct is actionable under the duty/risk analysis where it is both a cause in fact of the injury and a legal cause of the harm incurred. The cause in fact test requires that, but for the defendant's conduct, the injuries would not have been sustained. The legal cause test requires that there be a substantial relationship between the conduct complained of and the harm incurred. Martyniuk v. DL Mud, Inc., 526 So.2d 846 (La.App. 1st Cir.), writ denied 531 So.2d 276 (La.1988).
As a general proposition, it may be said that the violation of a statute, ordinance or regulation is not negligence per se. To amount to actionable negligence, the violative conduct must be unreasonable under the circumstances and must be a legal cause of the harm complained of. Martyniuk v. DLMud, Inc., supra. Dowe v. Grady, 540 So.2d 1040 (La.App. 2d Cir.1989).
In dental malpractice cases, the burden of proof is on the plaintiff to establish the dentist's deviation from the standard of care required by others in the same field. Wiley v. Karem, 421 So.2d 294 (La.App. 1st Cir.1982).
The applicable statute governing the plaintiff's burden of proof in this case is set forth in LSA-R.S. 9:2794 which provides:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., or a chiropractic physician licensed under R.S. *795 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill, and
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
B. Any party to the action will have the right to subpoena any physician, dentist or chiropractic physician for a deposition and/or testimony for trial to establish the degree of knowledge or skill possessed or degree of care ordinarily exercised as described above without obtaining the consent of the physician, dentist or chiropractic physician who is going to be subpoenaed. The fee of the physician, dentist or chiropractic physician called for deposition and/or testimony under this Section will be set by the court.
C. In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician, dentist or chiropractic physician. The jury shall be further instructed that injury alone does not raise a presumption of the physician's dentist's or chiropractic physician's negligence. The provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable.
The plaintiff was required to show that the defendant's treatment fell below the standard of care practiced by dentists. However, she offered no evidence in this regard other than the State Board of Dentistry regulation itself. To the contrary, the defendant showed that it was common practice among dentists to have dental assistants take all impressions, including final impressions from patients. The regulations of the State Board of Dentistry allow the taking of preliminary impressions by dental assistants, but the regulation is silent regarding final impressions. The record in this case shows that the procedure for making preliminary impressions is the same as for making a final impression. The difference in preliminary and final impressions is the degree of detail obtained from the impression. This rule appears to be aimed at assuring a proper fit for the dental appliance to be made from the impression, rather than preventing a dental assistant from injuring a patient while making an impression. Therefore, even though the defendant allowed a dental assistant to make the final impression, rather than doing it himself, the plaintiff failed to establish that this was the cause of her injury.
The plaintiff next contends that the jury erred in failing to find negligence on the part of the defendant and his dental assistant, thus denying her claim for recovery.
The plaintiff sought to prove that Ms. Smith, the dental assistant, while acting in violation of the regulations of the State Dental Board, and while making the final impressions for crowning her tooth, had difficulty in removing the impression tray from her mouth. Plaintiff further claimed that while removing the impression tray, Ms. Smith applied excessive pressure and dislodged the plaintiff's temporomandibular joint.
The plaintiff testified that when Ms. Smith took her impressions, she used a *796 great deal of force to remove the final impression tray. She did not experience pain in her jaw at that time. However, after she went home and the anesthetic wore off, she began to experience discomfort in her temporomandibular joint.
Both the defendant and Dr. Gamble testified that the anesthetic administered to the plaintiff would not have numbed the joint. They testified that if the temporomandibular joint had been injured during the course of taking the impression, the plaintiff would have immediately felt pain.
The only two witnesses to the degree of force used to remove the impression tray were the plaintiff and the dental assistant, Ms. Smith. Ms. Smith testified that she did not recall having any difficulty removing the plaintiff's impression trays. She testified that the plaintiff made no complaints during the treatments. In a situation where the fact finder's decision is based on crediting the testimony of one of two or more witnesses, this finding can almost never be found to be manifestly erroneous or clearly wrong. White v. McCoy, 552 So.2d 649 (La.App. 2d Cir. 1989).
The record shows that in 1984, the defendant referred the plaintiff to Dr. Gamble for treatment of her underdeveloped lower jaw. Dr. Gamble testified that due to this defect, the plaintiff was predisposed to TMJ and that he felt that the purpose of the original treatment plan suggested in 1984 was to try to prevent the type of occurrence at issue here. He also stated that sneezing, yawning or grinding the teeth could have caused the plaintiff's problem.
It is apparent in this case that the jury found that the plaintiff failed to establish a causal connection between the taking of the impression and the onset of her TMJ disorder. This finding is supported by the record.

CONCLUSION
For the reasons stated above, we affirm the trial court's rulings on the various pretrial motions appealed herein.
We also find that the jury verdict denying recovery to the plaintiff is supported by the record and is not manifestly erroneous or clearly wrong. Therefore, the trial court judgment is affirmed. Costs are assessed to the plaintiff.
AFFIRMED.

APPENDIX A
The Louisiana State Board of Dentistry Rule at issue in this case provides as follows:
Chapter 5 Dental Assistants § 501 Authorized Duties
A. A dental assistant is one who is employed by and works in the office of a licensed, registered, practicing dentist and performs the duties authorized by the Louisiana State Board of Dentistry under his direct on-premises supervision, direction and responsibility only.
B. A dental assistant may only perform the following under the direct onpremises supervision of the dentist who employs her or him:
1. Serve as the dentist's chair side assistant.
2. Take and develop dental x-rays and intra-oral photographs.
3. Take and record pulse, blood pressure and temperature.
4. Apply topical anti-cariogenic solution to the teeth.
5. Chart the mouth, floss the teeth, and make preliminary inspections of the mouth and teeth with a mouth mirror and floss only.
6. Give intra-oral instructions and demonstrations of oral hygiene procedures.
7. Place or remove celluloid or plastic strips between teeth for placement of filling material by the dentist.
8. Remove ligature ties.
9. Receive removable prosthesis for cleaning or repair work.
10. Remove cement from dental restorations and appliances, with hand instruments only, limited to the clinical crown.
11. Make dental plaque smears.

*797 12. Apply and remove rubber dams.
13. Make preliminary study model impressions and opposing model impressions.
14. Place or remove pre-formed crowns or bands for determining size only when recommended by the dentist under his supervision. Only the dentist may shape, festoon, contour, seat and cement all crowns, band and brackets.
15. Place or remove temporary separating devices.
16. Place or remove ligatures, cut and tuck ligatures, remove tension devices and any loose or broken bands or arch wires when directed by the dentist.
17. A retaining device usually placed in the mouth of a patient by such patient may be placed when directed by the dentist.
NOTES
[1] The full text of this rule is printed in an appendix attached to this opinion.
[2] LSA-R.S. 37:760(8) provides:

The board shall exercise, subject to the provisions of this Chapter, the following powers and duties:
8. Adopt rules and regulations in accordance with law and after due promulgation providing for approval of colleges, universities, and training schools for dentists, dental hygienists, and auxiliary personnel; and regulating the practice of licensed dentists and dental hygienists, by prescribing those acts, services, procedures, and practices which may be performed and imposing such requirements and restrictions on the performance thereof as it shall deem proper and necessary to protect and promote the public health and welfare of the citizens of this state. The board may adopt such rules as are necessary to register and charge registration fees for auxiliary personnel.