[2DALEY, Judge.
This appeal arises from a petition for damages filed on behalf of Lori Cooley (Cooley), plaintiff/appellant, against Benson Motor Co., of New Orleans, Inc. d/b/a Benson BMW, Benson Volkswagen (Benson), and Larry Morgan (Morgan), defendants/appellees. Cooley alleged that she was injured when she was struck in the face by a rock thrown from a lawn mower being operated on Benson’s property. Benson filed a Motion for Sum *1050 mary Judgment on the basis that Larry Morgan, the grass cutter, was an independent contractor who was neither an agent nor an employee of the dealership. The trial judge granted summary judgment, dismissing Cooley’s claims against Benson. We affirm.
Summary judgment is reviewed de novo by an appellate court using the same criteria used by the district court. Baker v. Maclay Properties Co., 94-1529 (La.1/17/95) 648 So.2d 888, 893. “The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together 13with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” LSA-C.C.P. art. 966(B).
The mover for summary judgment bears the burden of establishing that no material factual issue exists. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95) 653 So.2d 1152. “Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted.” Baker, supra at 893; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94) 634 So.2d 1180, 1183.
Benson filed the Affidavit of Martin Peake, Benson’s senior vice president and general manager, in support of its Motion for Summary Judgment. Peake’s Affidavit reads as follows:
THAT at the time of the alleged accident, the grass in front of the dealership was being cut by Larry Morgan.
THAT Larry Morgan was not an employee of Benson Motor Co. on March 10, 1994 nor at any other time.
THAT at the time of Lori Cooley’s alleged accident, Larry Morgan was mowing the grass at the dealership pursuant to a verbal contract for which he was paid a fixed price on a monthly basis to cut the grass.
THAT pursuant to the aforesaid contract, Larry Morgan supplied all equipment and personnel required to cut the grass.
THAT the lawn mowing equipment being operated by Larry Morgan at the time of Lori Cooley’s alleged accident was owned and operated by Larry Morgan.
THAT no employees of Benson Motor Co. were engaged in cutting the grass on March 10,1994, or assisting Larry Morgan jn his grass cutting work.
THAT pursuant to the aforesaid contract, Benson Motor Co. did not retain the right to exercise operational control over the method and means of the grass cutting work performed by Larry Morgan.
I4THAT no employees of Benson Motor Co. were exercising any operational control over the method and means by which Larry Morgan cut the grass at the dealership on March 10,1994.
THAT Benson Motor Co.’s only interest in the grass cutting work performed by Larry Morgan for the dealership was that the desired result was obtained, i.e. the lawn at the dealership was kept neatly mowed. The manner and means by which that result was obtained was under the sole and exclusive control of Larry Morgan.
Excerpt from Peake affidavit, R @ 12.
In addition, Benson submitted as an exhibit copies of the checks they used to pay Morgan for the grass cutting. The account was a general operating account and not a payroll account.
Cooley opposed the motion on the basis that Benson had an obligation to take safeguards to prevent injuries to passersby. She attached the deposition of Rocky Chaffin (Chaffin) in opposition to the motion. Chaf-fin, Benson’s safety and security director, testified he has been safety director since October 1994. In his deposition, Chaffin stated that he had an obligation to prevent accidents and to ensure the smooth operation of the parts and service departments. He worked more than 60 hours a week and had to be constantly aware of safety and security problems.
He was present when the incident occurred, although he was not the safety and security director at this time. Chuck Cartwright was the safety and security director. *1051 Cartwright informed him someone had been hit by a rock. Chaffin testified as to his “understanding” of the incident. He never stated he had personal knowledge of the incident.
Chaffin stated that Morgan had a verbal contract with Benson since 1994, just prior to the incident. He “understood” that Cooley was walking down the sidewalk. He “thought” Morgan was cutting between the sidewalk and the street when the incident happened. He “thought” that this would be parish property.
15When asked whether Benson ever closed off the sidewalk during the time lawn mowing operations were taking place, he stated that no one from Benson did, but that was Morgan’s responsibility. The lawn was usually mowed every Friday, depending on the weather. The grass was usually mowed early in the morning, but Benson did not tell Morgan when to cut the grass. He also testified that Morgan only worked for the months of February and March 1994 and that a new company began cutting the grass thereafter.
Cooley argued that Benson exercised care, custody and control over the property and had a safety director on its staff. She alleged Benson should have taken precautions for the safety of passersby. She pled this theory of negligence in addition to the vicarious liability of Benson for its alleged employee, the grass cutter.
The Supreme Court has explained the requisites for finding an independent contractor relationship as follows:
It is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor’s business and the nonexclusive means the contractor may employ in accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483 (1955).
The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the application of the principal test: the control over the work reserved by the employer. In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists. Amyx v. Henry & Hall, Ibid.
Hickman v. Southern Pac. Transport Co., 262 La. 102, 262 So.2d 385, 390-391 (La.1972).
This court has held:
As a general rule neither the owner nor the general contractor are liable for the negligence of an independent contractor who performed work for them unless, as urged by the plaintiffs here: (1) the work undertaken by the independent contractor is inherently or intrinsically dangerous, or (2) the person for whom the work is performed gives express or implied authorization to an unsafe practice or has the right to or exercises operational control over the method and means of performing the work. See Williams v. Gervais F. Favrot Co., 499 So.2d 623 (4th Cir.1986) writ denied 503 So.2d 19 (La.1987); Trapani v. Parish of Jefferson, 180 So.2d 850 (4th Cir.1965).
Villaronga v. Gelpi Partnership Number 3, 536 So.2d 1307, 1310-1311 (La.App. 5 Cir.1988), writ denied, 540 So.2d 327, 329 (La.1989).
We find that Benson met its burden of proof regarding the nature of its relationship *1052 with Larry Morgan. Peake’s Affidavit establishes the requisite conditions for. an independent eontractor/principal relationship. The Affidavit shows that Morgan furnished his own equipment, performed his duties without any input from Benson, and that Benson exercised no control over his methods. The Affidavit together with Chaffin’s deposition further establish that Morgan was paid on a monthly basis (i.e., he was paid once a month) to cut the grass every Friday, which establishes the “specific time” or “piecework” nature of the typical of the independent contractor/principal relationship. Hickman v. Southern Pac. Transport Co., supra.
Accordingly, we affirm the judgment of the trial court. Costs of this appeal are taxed to appellant.
AFFIRMED.