PAUL A. BONIN, Judge.
|T Sandy Iteld and her husband, Bruce, contracted with Four Corners Construction, L.P., an Austin Texas firm, to remodel their luxury home in Uptown New Orleans. As the remodeling project progressed, the Itelds and Four Corners had an increasing number of disputes, culminating in the Itelds forbidding Four Corners from returning to the project site and ultimately in their filing of this lawsuit. Four Corners reconvened.
In the pre-trial stages of the litigation, the trial judge granted two motions for partial summary judgment filed by Four *707 Corners which are before us on review. The Itelds seek our appellate review of these two interlocutory judgments in connection with their appeal of the final judgment rendered against them in this matter. See Bass Partnership v. Gravolet, 12-0024, pp. 10-11 (La.App. 4 Cir. 11/21/12), 105 So.3d 224, 231. Both partial summary judgments involved the application of the contract to the first twenty-six of Four Corners’ pay applications and the outstanding unpaid 10% retainage related to those applications. After our \9de novo review of these summary judgments, we affirm the ruling which foreclosed the Itelds’ claim that the jury reconsider disputes on the first twenty-six pay applications which had been authorized by their architect. With respect to the 10% retain-age issue, however, we find that there are genuine issues of material fact which preclude summary judgment and, accordingly, vacate the judgment and remand that issue to the district court for further proceedings.[1]
During the jury trial, the trial judge made three rulings which the Itelds argue were in error. The first ruling, an eviden-tiary one, restricted the testimony of a forensic accountant whom the Itelds had engaged as an expert witness. We have reviewed the proffer of the accountant’s testimony. We have also reviewed the ruling itself under an abuse-of-discretion standard and conclude that the trial judge did not abuse her discretion. The other two rulings related to the trial judge, over the Itelds’ objection, allowing the jury on jury interrogatories to consider and apportion fault on the architect and one of Four Corners’ subcontractors with respect to a damage claim involving the HVAC system.
We review these rulings under an abuse-of-discretion standard and find no abuse in the jury interrogatories which the trial judge submitted to the jury. Because the jury apportioned fault to the two non-parties, thus diminishing the fault attributable to Four Corners, we have reviewed their verdict under the clearly wrong standard and find that the jury’s verdict on this point is not clearly wrong and is reasonable.
I sin the post-trial stages of the litigation, the trial judge granted Four Corners’ motion for judgment notwithstanding the verdict with respect to two separate items. The trial judge granted the judgment notwithstanding the verdict and set aside the jury’s award of $25,000 to the Itelds for mental anguish because the parties’ contract conventionally limited the homeowners’ remedies to those allowed under the New Home Warranty Act. We review the granting of a judgment notwithstanding the verdict on the same criteria as that used by the trial judge. Because the Itelds are not entitled to mental anguish damages under their contract, the trial judge was legally correct in granting the judgment notwithstanding on this award. With respect to the other issue, increasing the jury’s award of $16,484 to Four Corners on account of the Itelds’ breach of the contract to the amount of $84,383.95, we find that reasonable persons exercising impartial judgment could reach differing conclusions about the amount to be assessed as damages and thus the trial judge erred in granting the judgment notwithstanding on that issue. Accordingly, we vacate that portion of the judgment notwithstanding and reinstate the jury’s verdict.
*708 For the sake of completeness on the issues before us in this forty-volume record, we also conclude that the issue raised by the Itelds concerning Four Corner’s recordation of a lien is moot.
In the Parts which follow we explain our decisions in considerably greater detail and also supply remand instructions to the trial judge.
Jii
In this Part, we discuss the general contours of the contract at issue, the facts underlying this matter, and the history of the proceedings in the district court. The Itelds, specifically, contracted with Four Corners to act as general contractor on an extensive renovation of their uptown New Orleans home.
A
The contract states that Four Corners agrees to renovate the Itelds’ residence according to plans prepared by their architect, Andersson/Wise Architects in exchange for the contract sum. The contract sum is defined as the cost of the work, as defined in the contract, and the builder’s fee, which is calculated as five percent for overhead costs and seven and one-half percent for profit.[2] The contract further authorized Four Corners to present the Itelds, not more than twice a month, with draw requests for progress payments that were to be based upon the work performed, Four Corners’ general condition costs, subcontractor billings, materials on the job site and deposits paid for materials on the job site and deposits paid for | .^materials.[3] The progress payments were also to include Four Corner’s prorated portion of its builder’s fee and profit, less a retainage often percent. The Itelds were obligated to pay Four Corners within five business days after receipt of each draw request, provided their architect approved the requested draw in writing. The contract also indicates that a final progress *709 payment, less a retainage often percent, shall be due and payable upon substantial completion.[4] The home was to be deemed substantially completed upon either the issuance of a certificate of occupancy or the movement of the Itelds into the residence, whichever occurred earlier.
Additionally, the contract recognized that at the time it was signed, the Itelds’ architect had not completed the plans, specifications and drawings for the project and that it was, therefore, impossible for Four Corners to provide an estimated date for substantial completion., Accordingly, the contract indicated that when the Itelds’ architect fully and finally completed the plans, specifications and drawings for the renovation, Four Corners was obligated to provide a good faith | (¡estimate of the date of substantial completion. The estimated date of completion was to be included by Four Corners on its schedule of values.[5] The schedule, however, was not introduced into evidence. Rather, Mrs. Iteld testified that Four Corners initially estimated that it would take fifteen months to complete the project.
Further, the contract noted that the provisions of the AIA201-1997, a standard form-contract general contract produced by the American Institute of Architects, shall apply and be effective with respect to thé renovation. Nevertheless, this provision of the contract also noted that because the project is extremely complex and revisions to the project may be extensive, complicated and require substantial additional time for Four Corners to complete, the provisions of this paragraph shall modify and control over the language contained in AIA201-1997 Article 7. The contract provided, however, that Four Corners was to use its best efforts in good faith to provide an estimate of the cost of contemplated changes, that either increase or decrease the schedule of values, provided that full and complete plans, drawings and specifications have been prepared by the Itelds’ architect. The Itelds, therefore, acknowledged that in the event fully completed and adequate plans, specifications and drawings had not been prepared, Four Corners would be unable to provide a meaningful estimate of the cost of the contemplated change.
17Upon substantial completion, the contract indicates that the Itelds, the architect, and Four Corners were to perform a walk through at the Itelds’ home and agree upon a punch list of incomplete items that were to be completed or repaired by Four Corners within a reasonable time, but not to exceed sixty days. The parties further obligated themselves to agree in good faith upon the estimated cost to complete punch list items -and the Itelds were entitled to retain an amount equivalent to one hundred fifty percent of the estimated cost for the punch list items which could be retained by the Itelds until Four Corners’ completion of such items.
The contract also identifies actions which, when taken by one or the other of the parties, would constitute an event of default. With respect to Four Corners, the contract indicates that its failure to correct deficiencies within forty-five days from the time it is advised by the architect *710 of such deficiencies shall constitute an event of default. With respect to the Itelds, the contract provides that their failure to make any payments due under the contract within seven working days of the date it is due constitutes an event of default. The contract further notes that the Itelds can cause a default if they delay Four Corners in the prosecution of the project, or interfere with the prosecution of Four Corners’ work or the work of the subcontractors.
The contract further indicates that if the Itelds commit an event of default, and such default is not cured within twenty days after delivery of a written notice, Four Corners is entitled to exercise any remedy granted by the contract agreement 18or by applicable law and pursue any other remedies available to it under the agreement or as provided by law. Upon the occurrence of an event of default by the Itelds, all amounts owed for work performed to that date and materials on the job site, as well as Four Corners’ administrative fees, profit and other costs of disengagement to that date will, at the option of Four Corners, after any notice and cure period, become immediately due and payable without prejudice to any other remedy of Four Corners. Moreover, if the Itelds fail to make payment to Four Corners as provided in the contract within seven working days after the date such payment is due, Four Corners may stop any and all work on the project until such time as payment is received. In the event of such a work stoppage occasioned by the Itelds’ failure to make payment to Four Corners, the period of time that the project is delayed shall be added to and extend the time for substantial completion of the project as provided by the contract.
B
Work began on the project in June of 2003. Relations, however, between the parties deteriorated over cost and time overruns. By the time of Hurricane Katrina, the project, while not finished, had progressed to its final stages. The Itelds’ home, however, suffered damage as a result of the hurricane and the work was stopped due to the fact of physical separation and broken lines of communication. In particular, the Itelds lost an estimated $400,000 in wine as a result of the failure of a back-up power generator that had been installed by |fldefendant Jacks Electric Service, Inc., to provide power to their wine cellar.[6] In the aftermath of the hurricane, the mounting disputes between the parties resulted in an impasse in that the Itelds refused to compensate Four Corners for unpaid, though disputed, work, while Four Corners refused to return to the jobsite until the Itelds paid several outstanding, pre-storm pay applications. Ultimately, the Itelds chose to finish their home renovation by excluding Four Corners from the jobsite, and working directly with the remaining subcontractors. Four Corners subsequently filed a lien against the Itelds for $268,505, which allegedly represented the unpaid balance owed to Four Corners for pre-Hurricane Katrina work.
C
The Itelds subsequently filed suit against Four Corners, several subcontractors, and their respective insurers for breach of contract. In their petition, the Itelds sought compensation for numerous deficiencies in the renovation of their home based on several causes of action. The *711 Itelds subsequently expanded upon the allegations of their initial petition when they filed an amended petition for damages. In response to the Itelds’ amended petition for damages, Four Corners filed a reeon-ventional demand against the Itelds seeking damages for breach of contract.
| mPrior to trial, all parties brought numerous motions for partial summary judgment. The district court granted, among others, two brought by Four Corners that touch upon aspects of the parties’ contractual claims. The Itelds appeal these two rulings within the confines of the present • matter. In the first judgment, the district court concluded that the Itelds were prohibited by the terms of the contract from contesting any aspects of the work reflected, or charges encompassed, in pay applications one through twenty-six, thus limiting the issues to be tried by the jury to unpaid charges and work reflected in pay applications twenty-seven through twenty-nine. In the second judgment, the district court concluded that Four Corners was entitled to the 10% retainage that had been contractually withheld from payment by the Itelds on pay applications one through twenty-six. Therefore, the retain-age issue was not placed before the jury.[7]
The jury trial focused on a handful of the Itelds’ specific remaining complaints: 1) the loss of their wine collection; 2) problems associated with the construction of their home’s new HVAC system; 3) the reconstruction of a gallery roof; 4) damages to Dr. Iteld’s tie cabinet, a library door, and improperly installed basement crawlspace ductwork; 5) the Itelds’ claims for mental anguish; and 6) Four Corners’ claim for breach of contract.
After deliberations, the jury first declined to award the Itelds any compensation for the loss of their wine collection. Second, while the jury ^concluded that Four Corners was not in breach of the contract with respect to the construction of the house’s HVAC system, it nevertheless found that Four Corners was negligent with respect to the HVAC system’s construction. The jury also concluded that Four Corners as well as four other non-parties were each twenty percent at fault for the negligent construction of the HVAC system and awarded the Itelds $37,580 as total compensation. Third, the jury found that Four Corners was responsible for the deviations in construction with respect to the gallery roof, and awarded the Itelds $36,850 for its reconstruction. Fourth, the jury concluded that Four Corners was responsible for the damage to Dr. Iteld’s tie cabinet, the library door, and the basement crawlspace ductwork, and awarded the Itelds $2,560 as compensation. Fifth, the jury found that the Itelds suffered mental anguish and awarded them $25,000 as compensation. The jury, lastly, found that the Itelds were in breach, though not in bad faith, of their contract with Four Corners and awarded Four Corners $16,484 as compensation.
After trial, the jury’s verdict was made the judgment of the court. Four Corners subsequently filed a motion for judgment notwithstanding the verdict and/or new trial wherein it argued that the judgment should be amended to: 1) award Four Corners $119,196.13 in retainage; 2) delete the award of $25,000 in mental anguish damages; 3) reduce the amount awarded for the tie cabinet, library door, and basement crawl-space ductwork to $600; 4) reduced the award for the reconstruction *712 of the gallery roof to $11,091.65; 5) increase the amount awarded to Four Corners for the Itelds’ breach of contract to $84,383.95; and 6) amend the | ^judgment to recognize Four Corners’ contractors lien in the face amount of $268,505.37. The district court granted Four Corners’ motion in part by vacating the $25,000 award for mental anguish damages, and increasing the award for breach of contract damages to $84,383.95. Although the district court denied Four Corners’ request for a specific amount of retainage, it sua sponte amended the January 31, 2012, partial judgment on retainage to award Four Comers the requested amount of $119,196.13. The district court denied Four Corners’ motion for judgment notwithstanding the verdict in all other respects.
The Itelds, subsequently, timely filed a notice of suspensive appeal and seek review of: 1) the district court’s partial judgment on pay applications one through twenty-six; 2) the district court’s exclusion of all evidence relating to work encompassed by pay applications one through twenty-six; 3) the district court’s partial judgment on retainage; 4) the district court’s exclusion of Michael Daigle, the Itelds’ expert CPA; 5) the district court’s inclusion of the project’s architect in the HVAC comparative fault jury interrogatory; 6) the reduction of the HVAC award by twenty percent for the fault of Factory Service Agency, Four Corners’ subcontractor; 7) the district court’s elimination of the $25,000 mental anguish award; 8) the district court’s increase of the breach of contract award to Four Corners from $16,484 to $84,383.95, and 9) the district court’s failure to dismiss Four Corners’ petition to enforce its contractor’s lien. We now discuss the Itelds’ assignments of error.
_bll
In this Part we address the Itelds’ contention that the district court erred when it granted Four Corners’ two motions for partial summary judgment with respect to pay applications one through twenty-six and retainage on pay applications one through twenty-six. Prior to trial, Four Corners filed a motion for partial summary judgment wherein it asked the district court to rule that the Itelds could not make any claims at trial regarding work or charges reflected in pay applications one through twenty-six because all- of those pay applications had been approved by the architect and paid by the Itelds without any claim or protest. The district court granted Four Corners’ motion and held that the “Itelds may not claim at trial any damages or restitution for Pay Applications 1 through 26.” The Itelds sought supervisory review, but we denied the Itelds’ application for supervisory writs. Sandy Iteld> et al. v. Four Comers Construction, L.P., et al, unpub., 10-1110 (La.App. 4 Cir. 9/21/10).
Four Corners’ subsequently brought another motion for partial summary judgment in which it argued that it was entitled to the retainage associated with pay applications , one through twenty-six in light of the fact that there were no outstanding disputes with respect to these pay applications. The district court granted this motion, although it failed to specify a dollar amount of retainage owed by the Itelds. The Itelds sought writs with this Court, but supervisory review was denied. Sandy Iteld, et al. v. Four Corners Construction, L.P., et al., unpub., 12-286 (La. App. 4 Cir. 3/16/12). As previously noted, the district court sua sponte |Mafter trial amended the judgment to award Four Corners $119,196.13 in retainage, and the Itelds now seek review of this award.
*713 After reviewing the contract and the evidence, we conclude that the district court properly granted Four Comers’ motion for partial summary judgment on pay applications one through twenty-six. On the other hand, we conclude that the district court erred when it concluded that Four Corners was entitled to retainage on pay applications one through twenty-six. We now explain our rulings on the pretrial motions for partial summary judgment in greater detail.
A
Appellate courts review the granting of summary judgment de novo under the same criteria governing the district court’s consideration of whether summary judgment is appropriate. See Hare v. Paleo Data, Inc., 11-1034, p. 9 (La.App. 4 Cir. 4/4/12), 89 So.3d 380, 387. “A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of summary judgment does not dispose of the entire case.” La. C.C.P. art. 966 E. “[A] motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.” La. C.C.P. art. 966 C(l). “The burden of proof remains with the movant.” La. C.C.P. art. 966 C(2). “However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summaiy judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, Inaction, or defense.” Id. “Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” Id.
The interpretation of a contract’s provisions is typically a matter of law that properly may be decided on motion for summary judgment. Hall v. Malone,' 12-0264, pp. 4-5 (La.App. 4 Cir. 11/7/12), 104 So.3d 593, 596. In analyzing contracts, certain fundamental legal principles apply. According to the rules of construction, the responsibility of the judiciary in interpreting contracts is to determine the parties’ common intent. See, La. Civil Code Art. 2045. Courts begin their analysis of the parties’ common intent by examining the words of the contract itself. See, La. Civil Code Art.2046. In ascertaining the common intent, words and phrases in a contract are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. See, La. Civil Code Art.2047.
Further, a contract is to be construed as a whole, and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. See, La. Civil Code Art.2050. Neither should a contract be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions |1fibeyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Edwards v. Dougherty, 03-2103, p. 11 (La.10/1/04), 883 So.2d 932, 941. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent and courts must enforce the contract as written. See, La. Civil Code Art.2046. Courts *714 lack the authority to alter the terms of contracts under the guise of contractual interpretation when its provisions are couched in unambiguous terms. Cadwallader v. Allstate Insurance Co., 02-1637, p. 4 (La.6/27/03), 848 So.2d 577, 580. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties’ intent. Edwards, 03-2103, p. 12, 883 So.2d at 941.
The interpretation of a contract is normally a question of law. Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741, 749-750. Likewise, the determination of whether a contract is clear or ambiguous is a question of law. Edwards, 03-2103, pp. 12-13, 883 So.2d at 941. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. Sims v. Mulhearn Funeral Home, Inc., 07-0054, p. 10 (La.5/22/07), 956 So.2d 583, 590.
I17B
The Itelds do not contend that the contract or the AIA general conditions, which are incorporated into the contract, are ambiguous. Rather, the Itelds contend that the district court misinterpreted the contract to prohibit them from contesting charges at trial associated with pay applications one through twenty-six. Our reading of the contract does not bear out the Itelds’ contention on this point. The AIA general conditions largely govern this aspect of the Itelds’ appeal.
Specifically, the general conditions indicate that the architect will provide administration of the contract and will be an owner’s representative during construction, until final payment is due, and during the one-year period for correction of work. Significantly, the architect has the contractual authority to reject work that does not conform to the contract documents. The AIA general conditions also empower the architect to interpret and decide matters concerning performance under, and requirements of, the contract documents pursuant to written request of the parties. Further, the AIA general conditions task the architect with reviewing and certifying Four Corners’ applications for payment and with issuing certificates for payment in such amounts that he warrants to be due.
The AIA general conditions also obligate the architect with resolving claims and disputes between the Itelds and Four Corners. A claim, under the AIA general conditions, is defined accordingly:
A claim is a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term “Claim” also includes other |18disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. Claims must be initiated by written notice. The responsibility to substantiate the Claims shall rest with the party making the Claim.
Claims must be initiated within twenty-one days after the occurrence of the event giving rise to the claim or within twenty-one days after the claimant first recognizes the condition giving rise to the claim, whichever is later. Moreover, the AIA general conditions also provide that pending final resolution of a claim Four Corners was obligated to “proceed diligently” with the performance of the contract, while *715 the Itelds were obligated to continue making payments in accordance with the contract.
The AIA general conditions further indicate that claims are to be referred initially to the architect for decision. The architect is obligated to review the parties’ claims and, within ten days of the receipt of the claim, take one or more of the following actions: 1) request additional supporting data from the claimant or a response with supporting data from the other party; 2) reject the claim in whole or in part; 3) approve the claim; 4) suggest a compromise; or 5) advise the parties that he is unable to resolve the claim due to a lack of sufficient information or because he has concluded that it would be inappropriate for him to resolve the claim. The approval or rejection of a claim by the architect shall be final and binding on the parties but subject to arbitration and mediation. Moreover, the submission of a claim to the architect is a condition precedent to arbitration and/or mediation of the claim. Importantly, the failure to demand arbitration on an arbitral claim within |19thirty days after an architect’s final written decision shall result in the decision becoming final and binding upon the parties.
The contract between the Itelds and Four Corners, therefore, provides clearly that Four Corners was obligated to first submit its pay applications to the architect for review. The architect was then obligated to either accept or reject the pay application. If the architect accepted Four Corners’ pay application, he was obligated to issue a certificate for payment that bound the Itelds to either make timely payment to Four Corners or institute a timely claim for resolution with the architect. The contract establishes the architect as the focal point for contract interpretation and dispute resolution between Four Corners and the Itelds and sets a twenty-one day time limit for the institution of claims. The architect’s decision is binding on the parties. If, however, either party is unsatisfied with the architect’s decision then that party is empowered to seek arbitration or mediation. The architect’s resolution of a given claim becomes binding in light of a parties’ failure to request arbitration or mediation within thirty days.
Our review of the evidence introduced by the Itelds in opposition to Four Corner’s first motion for partial summary judgment reveals that while there was discussion among the parties as to costs associated with certain of Four Corners’ change order requests, there is no evidence that the Itelds utilized the dispute process set out in the contract to dispute those charges. Moreover, there is no evidence that the Itelds paid any of pay applications one through twenty-six under protest or objected formally, according to the terms of the contract, to any of thej^items included therein. For example, the Itelds have objected, since the time of the filing of their initial petition for damages, to Four Corners’ practice of charging for expenses of its project managers’ travel, room, and board. When opposing Four Corner’s motion for partial summary judgment, however, the Itelds pointed to no contemporaneous objections, whether formal or informal, made at the time such charges were included in pay applications one through twenty-six. The contract between the parties provides clearly for a dispute resolution process. The evidence indicates that the Itelds failed to utilize that process while their home was under-renovation. The clear language of the contract indicates that the Itelds’ payment of pay applications one through twenty-six, in the absence of any type of formal dispute, bars any later attempt to litigate subsequently disputed items within these pay applications. After our de novo review of *716 this summary judgment, we affirm the ruling which foreclosed the Itelds’ claim that the jury reconsider disputes on the first twenty-six pay applications which had been authorized by their architect. In light of the foregoing ruling, we, likewise, conclude that the district court also properly excluded from trial as irrelevant all evidence relating to, or arising out of, pay applications one through twenty-six.
C
In this Part we address the Itelds’ contention that the district court erred when it awarded Four Corner’s the retain-age withheld from pay applications one through twenty-six. In its motion for partial summary judgment, Four Corners argued that it was entitled to the retainage on pay applications one through twenty-[sixai because of the district court’s prior determination that the work represented by pay applications one through twenty-six were no longer at issue. Because of this ruling, Four Corners reasoned, the Itelds had no legal grounds for withholding the retainage on pay applications one through twenty-six. The district court agreed and, eventually, granted the amount prayed for by Four Corners. Our review of the contract and the record, however, indicates that the district court erred when it granted Four Corners’ a judgment with respect to retainage.
Retainage, specifically, is a portion or percentage of payments due for work completed on a contract that is held back until the entire job is completed satisfactorily. Kostmayer Construction, Inc. v. Sewerage & Water Board of New Orleans, 05-1184, p. 4 (La.App. 4 Cir. 10/18/06), 948 So.2d 1240, 1243, n. 8. In State of Louisiana, Military Department v. Laconco, 430 So.2d 1376,'1382 (La.App. 1 Cir.1983), the First Circuit observed:
The law in Louisiana is that once the project is substantially complete, then the contractor is entitled to the contract price. If corrective work is required, the owner is entitled to deduct the cost of this work from the retainage and withhold it until the work is satisfactory. However, the owner is not entitled to withhold the entire retainage (in this case over 10% of the contract price) until every minor deficiency is taken care of. He can retain only as much as reflects the cost of uncompleted work. Boydstun v. Johnson, 401 So.2d 629 (La. App. 3rd Cir.1981), writ denied 404 So.2d 1262 (La.1981). Logically, the function of the punch list is to apprise the contractor of work in need of correction. As such, it should be forthcoming at or near the time of substantial completion in order that the project may be closed out as soon as possible.
The contract at issue indicates that Four Corners was to submit with each application for payment a retainage schedule, indicating the amount of retainage being currently withheld from each line item on the schedule of values. The IteldsJ^were authorized by the contract to withhold ten percent as retainage from the builder’s fee. If no lien claims are filed within thirty days after substantial completion of construction, and upon issuance of a lien certificate from the Recorder of Mortgages of the Parish of Orleans indicating no existing or outstanding liens caused by the work, the Itelds were obligated to pay any remaining retainage to Four Corners on the thirty-first calendar day subsequent to substantial completion of the work and substantial completion of all punch lists developed by the parties during the walk through, whichever was the later date. Additionally, the contract’s section on final payment also discusses retainage and indicates that it “shall be released upon the
*717 Architect’s certification that all work has been completed in a satisfactory manner.”
Our examination of the record, in light of the contract, indicates that Four Corners did not establish that it procured a lien certificate from the Orleans Parish Recorder of Mortgages, or that the architect certified that all work had been completed in a satisfactory manner. Moreover, it is also clear from the record that at the time the relationship between the parties collapsed Four Corners had not substantially completed work on all punch lists. Further, Four Corners fails to argue — and there is no evidence to the effect — that it terminated the contract with the Itelds pursuant to section 14.1.1 of the AIA general conditions, which would arguably entitle it to recover payment for the work from the owner pursuant to | ^section 14.1.B.[8] Simply put, Four Corners' entitlement to retainage is based solely on contractual provisions and it failed to establish its contractual right to retainage at the time the district court granted its partial motion for summary judgment.[9] Indeed, its arguments to us point to no provision of the contract or the AIA general conditions in support of its claims for retainage and our review of the record reveals none. Accordingly, we conclude that the district court erred when it awarded Four Corners retainage with respect to pay applications one through twenty-six because genuine issues of material fact remain with respect to Four Corners’ right to collect the re-tainage. After our de novo review of this summary judgment, we find that there are genuine issues of material fact which preclude summary judgment and, accordingly, vacáte the judgment and remand this issue to the district court for further proceedings. We, likewise, vacate the amended judgment, dated June 20, 2012, in favor of Four Corners, LP, and against Sandy and Bruce Iteld in the amount $119,196.13.
Ill
In this Part we discuss the Itelds assignments of error concerning matters that occurred during the trial of this matter. Our opinion will first address the Itelds’ argument that the district court improperly excluded certain aspects of the testimony of their forensic certified public accountant, Michael Daigle, from trial. I^Next, we will-discuss the district court’s inclusion of the project’s architect in the HVAC comparative fault jury interrogatory. Our opinion will then address the Itelds’ claim that the jury erred when it reduced the HVAC award by twenty percent for the fault of Factory Service Agency, Four Corners’ subcontractor.
A
As noted, we first address the Itelds’ arguments concerning the district court’s limitation of Michael Daigle’s trial testimony. Specifically, the Itelds offered Michael Daigle as an expert to testify on the areas of accounting, forensic accounting, construction contract claims, interpretation and analysis in support of their claims challenging certain aspects of pay . applications twenty-seven through twenty- *718 nine, and for breach of contract and delay damages. After examining Mr. Daigle on his expertise and qualifications, Four Corners objected to any aspect of Mr. Daigle’s testimony insofar as it was based upon his interpretation of the contract documents. The district court agreed with Four Corner’s objection and ruled accordingly:
So I don’t believe that he is qualified to interpret a contract. He’s not a lawyer. And, so I’m not going to qualify him as a lawyer. As a CPA, yes, I will. But I think you’re going to get into some murky waters when he starts explaining the contract to them. It’s a matter of law. It’s not a matter of fact. And bill charges in accordance with the terms of the contract equal contract interpretation. So I’ve got some problems there. And I don’t understand why you didn’t bring a contract lawyer.
The Itelds’ attorney then examined Mr. Daigle before the jury. Because of the district court’s limitation on his testimony, Mr. Daigle was unable to provide any testimony to the jury regarding his calculations on: 1) alleged unapproved | ^charges on pay applications twenty-seven through twenty-nine; 2) breach of contract damages; 8) delay damages; and 4) Four Corners’ breach of contract claims. The Itelds were permitted, however, to question Mr. Daigle as to his calculations regarding the loss of their wine collection. After trial, and in accordance with La. C.C.P. art. 1686, the Itelds made a proffer statement addressing the nature of Mr. Daigle’s excluded testimony. See Cusimano v. Port Esplanade Condominium Ass’n, Inc., 10-0477, pp. 5-8 (La.App. 4 Cir. 1/12/11), 55 So.3d 931, 935-936.
The Itelds now argue that the district court erred when it excluded certain aspects of Mr. Daigle’s expert testimony on the grounds that it encompassed legal opinion testimony by way of contract interpretation. The testimony of an expert, with the attendant right to express opinions and conclusions, is proper for the purpose of assisting the court only in those fields in which the court lacks sufficient knowledge to enable it to come to a proper conclusion without such assistance. Wilson v. Wilson, 542 So.2d 568, 573 (La.App. 4 Cir.1989). Further, it is axiomatic that a Louisiana district court has broad discretion in determining who should or should not be permitted to testify as an expert and whether expert testimony is admissible, and its judgment with respect to such matters will not be disturbed on appeal unless manifestly erroneous. Id. We have reviewed Mr. Daigle’s trial testimony and the district court’s reasons for limiting Mr. Daigle’s testimony. We conclude that the district court’s ruling limiting Mr. Dai-gle’s testimony did not constitute an abuse of the vast amount of discretion that is afforded Lato it by the law. Similarly, we have examined that portion of the Itelds’ proffer statement concerning Mr. Daigle’s purported testimony and conclude that a reversal or modification of the district court’s limitation is not necessary in light of this Court’s remand of this matter for litigation of the retainage issue. Accordingly, we conclude, after having reviewed the ruling itself under an abuse-of-discretion-standard, that the trial judge did not abuse her discretion in limiting Mr. Dai-gle’s testimony.
B
The jury in this case awarded the Itelds $35,580 in response to the Itelds’ claims for damages arising out of Four Corners’ reconstruction of their home’s HVAC system. Although the jury’s other awards were contractually based, this award (as well as the award for mental anguish damages), was based on negligence principles. The Itelds do not contest the total amount *719 awarded by the jury in response to their HVAC claim. Rather, the Itelds argue that certain aspects of the comparative fault aspect of the jury award are erroneous.
In this Part, therefore, we discuss the Itelds’ arguments concerning the district court’s inclusion of the project’s architect in the HVAC comparative fault jury interrogatory, and the district court’s refusal to allocate Factory Service Agency’s twenty percent of the fault under the HVAC award to Four Corners. The record establishes that the Itelds, as part of the renovation, contracted to have a new HVAC system installed in their home. Their architects hired Howell Consultants to act as mechanical engineers and Suman Jolly to act as the electrical |27engineer, while Four Corners subcontracted with Factory Service Agency to install the new system. The evidence adduced at trial indicates that the Itelds’ HVAC system was improperly designed and constructed in that: 1) there were gaps in the duct work; 2) some of the duct heaters were improperly installed; 3) an improper controller was installed on the system; and 4) improper HVAC system wires were utilized that could not carry the amp load drawn by the system. Until the problem was finally resolved after Hurricane Katrina, the faulty HVAC system caused the house’s lights to randomly blink and pulsate. Moreover, the faulty HVAC system resulted in numerous astronomical utility bills and cost the Itelds tens of thousands of dollars to repair. The Itelds sought compensation from Four Corners only for its role in the construction of the HVAC system.
The trial transcript indicates that the district court, over the Itelds’ objections, accepted Four Corners’ proposed jury interrogatories regarding the reconstruction of the Itelds’ HVAC system. The jury interrogatories first asked if the jury found that it breached the contract with respect to the HVAC system. The jury decided that Four Corners did not breach the contract. The interrogatories then asked, and the jurors found, that Four Corners was negligent with respect to the construction of the HVAC system and that this negligence was a legal cause of the Itelds’ damages. The interrogatories then asked the jurors to conduct a comparative fault analysis between Four Corners and four other non-parties: 1) Howell Consultants, LP, the project’s mechanical engineers; 2) Anderson-Wise, the architectural firm responsible for the design of the reconstruction; 3) Suman 128Jolly, the project’s electrical engineer; and 4) Factory Service Agency, the subcontractor initially tasked with carrying out the installation of the home’s new HVAC system. The jury responded by attributing twenty percent of the legal fault to both Four Corners and the four non-parties. The Itelds now assign as error, specifically, the inclusion of the architect among the other non-parties on the comparative fault interrogatory and the jury’s assessment of twenty percent fault to the architect.
La. C.C. art. 2323 is the touchstone provision for Louisiana’s system of comparative fault, and provides in pertinent part:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers *720 injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.
Similarly, La. C.C.P. art. 1812 sets out the rules governing the implementation of La. C.C. s 2328 in the context of jury interrogatories:
C. In cases to recover damages for injury, death, or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to: ,
|29(1) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage.
(2)(a) If appropriate under the facts adduced at trial, whether another party or nonparty, other than the person suffering injury, death, or loss, was at fault, and, if so:
(i) Whether such fault was a legal cause of the damages, and, if so:
(ii) The degree of such fault, expressed in percentage.
(b) For purposes of this Paragraph, nonparty means a person alleged by any party to be at fault, including but not limited to:
(i) A person who has obtained a release from liability from the person suffering injury, death, or loss.
(ii) A person who exists but whose identity is unknown.
(iii) A person who may be immune from suit because of immunity granted by statute.
(3) If appropriate, whether there was negligence attributable to any party claiming damages, and, if so:
(a) Whether such negligence was a legal cause of the damages, and, if so:
(b) The degree of such negligence, expressed in percentage.
Accordingly, La. C.C.P. art. 1812 C(2)(a) permits jury interrogatories regarding nonparties “if appropriate under the facts adduced at trial.” Non-parties include those that are unknown. La. C.C.P. art. 1812 C(2)(b)(ii). Additionally, it is within the trial judge’s broad discretion to include a jury interrogatory referring to a possibly negligent non-party. 'Wilson v. Transportation Consultants, Inc., 04-0334, p. 10 (La.App. 4 Cir. 3/2/05), 899 So.2d 590, 599. Further, a jury’s | ^apportionment of fault is subject to a manifest error analysis, and will not be set aside absent abuse of the trier of fact’s great, even vast discretion. Lederer v. Famous Entertainment, Inc., 98-2274 (La. App. 4 Cir. 5/12/99), 732 So.2d 1277, 1286.
The jury heard evidence that the Itelds’ architect chose both the mechanical and electrical engineers responsible for designing the Itelds’ HVAC system. The jury also heard evidence that the architect was involved in the numerous unsuccessful attempts to rectify the problem. Due to the discretion of the judge in allowing a jury interrogatory in regards to a non-party and the evidence adduced at trial demonstrating the architect as a possibly negligent non-party, the district court did not abuse its discretion by submitting the in *721 terrogatory to the jury because it is well within the letter of the law.
The Itelds also assert that the jury erred in allocating 20% of the fault for the HVAC system to the architect because there was an absence' of evidence regarding the architect’s liability. The evidence established, however, that the architect selected both the mechanical and electrical engineers and that he was involved in the unsuccessful attempts to remedy the HVAC system’s numerous problems. Accordingly, the jury’s decision to find the architect twenty percent at fault for the Itelds’ HVAC system is not manifestly erroneous and is reasonable.
Lastly, the Itelds argue that the district court erred when it refused to allocate Factory Service Agency’s twenty percent of the fault under the HVAC award to Four Corners. In essence, the Itelds argue that Four Corners should assume | S1 Factory Service Agency’s percentage of fault because Factory Service Agency was Four Corners’ subcontractor. In other words, the Itelds argued to the district court that Four Corners should be held vicariously liable for Factory Service Agency’s negligence pursuant to La. C.C. 2320.
Under La. C.C. art. 2820, the master or employer is responsible for the damage occasioned by their servants in the exercise of the functions in which they are employed. Liability only attaches, however, when masters or employers might have prevented the act which caused the damage and have not done it. Olivier v. Best Workover, Inc., 94-994, p. 8 (La.App. 5 Cir. 1/30/96), 669 So.2d 476, 482.
Before La. C.C. art. 2320 can apply, the party claiming vicarious liability must show the existence of the employment relationship. The law recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the application of the principal test: the control over the work reserved by the employer. Cooley v. Benson Motor Co. of New Orleans, 97-27, p. 5 (La.App. 5 Cir. 5/28/97), 695 So.2d 1049, 1051. In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists. Id. In determining the right of control, the court must consider several factors in the relationship. Whether a party is an employee or independent contractor depends upon an analysis of these elements according to the particular facts of each case. Olivier, supra at 482. Included among the factors is the total economic relationship between the parties. Id. The ^essence of the employer-employee relationship is the right to control. Tate v. Progressive Sec. Ins. Co., 08-0950, p. 8 (La.App. 4 Cir. 1/28/09), 4 So.3d 915, 920. The four primary evidentiary factors considered in deciding the above are: 1) selection and engagement; 2) payment of wages; 3) power of dismissal; and, 4) power of control. Id. The crux, however, of this issue is the degree of control, if any, afforded to Four Corners over the work performed by Factory Services Agency. The determination of a vicarious liability issue is a mixed question of law and fact. Russell v. Noullet, 98-0816, p. 5 (La.12/1/98), 721 So.2d 868, 871. A district court’s determination that a particular action of an employee falls within the course and scope of his employment is subject to the manifest error standard. See Wright v. Skate Country, Inc., 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874.
The Itelds argue that the evidence adduced at trial establishes that Four Corners controlled Factory Service Agency’s *722 work on the HVAC project. Specifically, the Itelds point to this interchange between their counsel and Mike Mitternight, Factory Service Agency’s president:
Q. You knew that Four Corners was responsible for supervising and directing your work; isn’t that true?
A. Yes.
Q. And you also knew that Four Corners was responsible for coordinating all portions of the work under the contract; isn’t that true?
A. Yes.
While the foregoing exchange is probative towards the issue of control, we are not of the opinion that it is sufficient to the control issue by a preponderance of | o»the evidence. Accordingly, we are not of the opinion that the district court committed manifest error when it refused to allocate Factory Service Agency’s twenty percent of the fault under the HVAC award to Four Corners.
IV
In this Part we discuss the Itelds assignments of error concerning matters that occurred after the jury rendered its verdict. First, we examine the Itelds’ assertion that the district court, in response to Four Corners’ motion for judgment notwithstanding the verdict, improperly struck the jury’s award for mental distress damages, and conclude that the district court properly granted this aspect of Four Corners’ motion. Second we examine the Itelds assertion that the district court, in response to Four Corners’ motion for judgment notwithstanding the verdict, improperly increased the jury’s award of breach of contract damages to Four Corners. After reviewing the record, we conclude that the district court erred when it granted Four Corners’ judgment notwithstanding the verdict and increased the jury’s award from $16,484 to $84,383.95. Lastly, we address the Itelds’ contention that the district court erred when it failed to dismiss Four Corners’ petition to enforce its contractor’s lien.
A
Because two of the assignments of errors discussed in this part concern the district court’s actions with respect to Four Corners’ motion for judgment notwithstanding the verdict, we first discuss briefly the law applicable to such motions and the appropriate standard of review.
| S4A motion for judgment notwithstanding the verdict is defined by La. C.C.P. art. 1811. The article allows for a judgment notwithstanding the verdict on the issue of liability or damages, or both. Jurisprudence limits the application of the judgment notwithstanding the verdict doctrine to cases where the jury’s verdict is absolutely unsupported by any competent evidence. Sciambra v. Jerome Imports, Inc., 05-0260, p. 5 (La.App. 4 Cir. 12/14/05), 921 So.2d 145, 149. A judgment notwithstanding the verdict is warranted when the facts and circumstances point so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict, not merely when the district court finds that there is a preponderance of the evidence in favor of the mover. Where there is evidence opposed to the motion of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829, 832 (La.1991). When deciding a judgment notwithstanding the verdict, the district court should not evaluate the credibility of witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Id.
*723 In reviewing a judgment notwithstanding the verdict on appeal, a two-part inquiry is necessary. First, the appellate court must determine if the district court erred in granting the judgment notwithstanding the verdict. The appellate court uses the same criteria as the district court in deciding whether or not to grant the motion, i.e., do the facts and inferences point so strongly and overwhelmingly in lasfavor of the moving party that reasonable persons could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the district court was correct in granting the motion. If, however, reasonable persons exercising impartial judgment could reach a different conclusion, then it is error to grant the motion and the jury’s verdict should be reinstated. Torrejon v. Mobil Oil Co., OS-1426, p. 10 (La.App. 4 Cir. 6/2/04), 876 So.2d 877, 885. Second, “[a]fter determining that the district court correctly applied its standard of review as to the jury verdict, the appellate court reviews the judgment notwithstanding the verdict using the manifest error standard of review.” Cat-tles v. Allstate Ins. Co., 09-1576, pp. 7-8 (La.App. 4 Cir. 8/4/10), 45 So.3d 627, 631.
B
As noted, Four Corners reconvened against the Itelds for breach of contract • with respect to pay applications twenty-seven through twenty-nine. The gross billing on these three pay applications equaled $119,499. The Itelds argued to the jury that in the event it decided to make an award to Four Corners for breach of contract, it should also deduct from this figure the amounts that they paid directly to three subcontractors, the value of an unapproved change order for an HVAC controller, various disputed contractor charges — such as project manager and superintendent fees, travel, automobile, and lodging costs — and contractor fees for pay applications twenty-seven through twenty-nine. If the jury made this calculation, the Itelds argued to the jury that Four Corners was only due $16,484 for breach of contract. Four Corners, on the other hand, argued to the jury that it lafiWas due $84,383.95, which represented the gross billing on the disputed pay applications, minus the amounts that the Itelds paid directly to the three subcontractors. The jury elected to award Four Corners $16,484.
We have reviewed the record and the .exhibits introduced at trial, and we find that the Itelds argument and proposed award was sufficiently substantiated by the evidence. While they were prohibited from contesting various charges with respect to pay applications one through twenty-six, the district court allowed the Itelds to argue to the jury that' such charges were unwarranted under the contract with respect to the unpaid pay applications, i.e., applications twenty-seven through twenty-nine. Given that the jury accepted the Itelds’ proposed breach of contract award on Four Corners’ claim, it is, therefore, reasonable to conclude that the jury accepted the Itelds’ arguments that they were not obligated under the contract to compensate Four Corners for such items as the unapproved change order for an HVAC controller, various disputed charges such as project manager and superintendent fees, travel, automobile, and lodging costs, in addition to the contractor fees.
Four Corners, however, now argues that the district court’s judgment notwithstanding the verdict was warranted by virtue of the fact that the Itelds made a mathematical error in their calculation of the disputed contractor fees. We are not prepared to say, however, that this suggested mathematical discrepancy, which is small when taken in context of the overall award, is so *724 great, or so egregious, as |S7to render the jury’s verdict on this point unsupportable under the reasonable man standard.
Both parties presented several different figures, all of which were supported by the parties’ varying interpretations of the evidence, to the jury for consideration. The jury .was also asked to review a fair amount of complex, construction accounting paperwork and a highly complex series of interlocking contracts. Moreover, the Itelds attempted to aid the jury in understanding the various calculations in play by asking their expert forensic accountant, Michael Daigle, to provide the jury with a total amount of disputed charges. The district court, however, acting upon Four Corners’ objections consistently forbade Mr. Daigle from providing the jury with numerical figures summarizing the disputed charges. The district court reasoned that such testimony should be excluded on the grounds that it constituted the rendering of a legal opinion by Mr. Daigle. While we are not prepared to state that the district court’s ruling on this point constitutes an abuse of discretion, we will neither conclude that reasonable and fair-minded jurors, when acting under such informational constraints, were unreasonable in making such an award. Clearly, reasonable jurors, acting in the exercise of impartial judgment could reach different conclusions on this issue and the district court erred when it ruled otherwise. Accordingly, we reverse the district court’s granting of a judgment notwithstanding the verdict in favor of Four Corners with respect to its breach of contract claim and reinstate the jury’s award of $16,484.
[[Image here]]
In this Part we discuss the district court’s elimination of the jury’s award of $25,000 in mental distress damages to the Itelds in response to Four Corners’
motion for a judgment notwithstanding the verdict. Four Corners argued to the district court that its contract with the Itelds specifically incorporated the terms and limitations of Louisiana’s New Home Warranty Act. Four Comers also asserted that the New Home Warranty Act specifically excludes claims for nonpecuniary damages. Four Corners, accordingly, argued that the jury’s award of mental distress damages is legally unsupportable and should be stricken. The district court agreed and eliminated the award pursuant to Four Corners’ request for a judgment notwithstanding a verdict.
Our review of the Itelds’ contract with Four Corners indicates that it incorporates the terms and exclusions of the New Home Warranty Act. The contract, in pertinent part, provides:
The parties hereto acknowledge that the work performed under this contract shall be considered work that is governed by the new home warranty act, La. R.S. 9:3141 et seq. ... The Builder’s warranty excludes damages or defects caused by abuse, modifications not executed or authorized by Builder, improper or insufficient maintenance, improper operation or normal wear and tear under normal usages, and all other exclusions set forth in the New Home Warranty Act, La. R.S. 9:3141 et seq.
The New Home Warranty Act, at La. R.S. 9:3144 B, provides in pertinent part:
B. Unless the parties otherwise agree in writing, the builder’s warranty shall exclude the following items:
[[Image here]]
|S9(4) Any damage to the extent it is caused or made worse by any of the following:
(a) Negligence, improper maintenance, neglect or improper operation by anyone other than the builder or any
*725 employee, agent, or subcontractor of the builder.
[[Image here]]
(6) Any defect in, or any defect caused by, materials or work supplied by anyone other than the builder, or any employee, agent, or subcontractor of the builder.
[[Image here]]
(8) Loss or damage which does not constitute a defect in the construction of the home by the builder, or any employee, agent, or subcontractor of the builder.
[[Image here]]
(13) Any condition which does not result in actual physical damage to the home.
(14) Bodily injury or damage to personal property.
[[Image here]]
(17) Consequential damages.
The foregoing provisions’ prohibition against an award of consequential damages has been interpreted to exclude, in the absence of a clearly written contract to the contrary, non-pecuniary damage, “that is, damage of a moral nature which does not affect a ‘material’ or tangible part of a person’s patrimony.” La. C.C. art.1998, Revision Comments — 1984, comment (b) (citation omitted); Thibodaux v. Arthur Rutenberg Homes, Inc., 04-1500, p. 7 (La.App. 1 Cir. 12/22/05), 928 So.2d 80, 86. Clearly, the Itelds contract with Four Corners contains no provision obligating Four Corners to compensate the Itelds for non-|pecuniary4a damages. Accordingly, we conclude that the district court properly struck this item of damage from the jury’s verdict.
[[Image here]]
Lastly, the Itelds assert that the district court erred when it failed to dismiss Four
Corners’ petition to enforce its contractor’s lien. This issue, however, is moot in light of the fact that Four Corners voluntarily cancelled its lien on December 3, 2012, after the Itelds posted a suspensive appeal bond in support of their present appeal, so that the Itelds could sell the house that is the subject of the present appeal.
CONCLUSION
We affirm the district court’s partial judgment on pay applications one through twenty-six, as well as its ruling excluding all evidence relating to work encompassed by pay applications one through twenty-six. We, however, reverse the district court’s partial judgment on retainage and remand with instructions. Further, we affirm the district court’s limitation of the testimony of Michael Daigle, the Itelds’ expert CPA. Moreover, we affirm the district court’s inclusion of the project’s architect in the HVAC comparative fault jury interrogatory and its refusal to allocate Factory Service Agency’s twenty percent of the fault under the HVAC award to Four Corners. Additionally, we affirm the district court’s elimination of the $25,000 mental anguish award, but reverse the district court’s increase of the breach of contract award to Four Corners from $16,484 to $84,383.95. Finally, we affirm the district court’s refusal to grant the Itelds’ |41request to dismiss Four Corners’ petition to enforce its contractor’s lien, as the issue is now moot.
REMAND INSTRUCTIONS
Because the issue of Four Corners’ entitlement to the 10% retainage (or $119,196.13) related to the first twenty-six applications was not tried by the jury (and it should have been) and because we have vacated the partial summary judgment as well as the ensuing post-trial judgment which purported to amend or correct that *726 judgment, it is necessary that we remand that aspect to the district court for a new trial. The new trial shall be limited to the entitlement of Four Corners to all or portion of the unpaid retainage.
Once the trier of fact decides what amount, if any, of unpaid retainage is due to Four Corners, the trial judge shall render a final judgment in these proceedings that appropriately credits or debits each party with those amounts due the other, in addition to the net amount owed to the ultimate prevailing party. In this regard, we have calculated that the net amount owed, after adjustments made to the awards by us[10] and considering those awards not appealed by the parties,[11] is $80,042 by Four Corners to the Itelds; this amount is, of course, not executory at this time.
After the rendition of the final judgment, and subject to law-of-the-case principles,[12] any aggrieved party is entitled to an appeal.
|42DECREE
The partial summary judgment in favor of Four Corners, LP, and against Sandy and Bruce Iteld dated July 28, 2010 is affirmed.
The partial summary in favor of Four Corners, LP, and against Sandy and Bruce Iteld dated January 31, 2012 is vacated, and the amended judgment, dated June 20, 2012, in favor of Four Corners, LP, and against Sandy and Bruce Iteld in the amount $119,196.18 is also vacated.
The judgment notwithstanding the verdict in favor of Four Corners, LP, and against Sandy and Bruce Iteld setting aside the award of $25,000 is affirmed.
The judgment notwithstanding the verdict in favor of Four Corners, LP, and against Sandy and Bruce Iteld increasing the award to $84,383.95 dated July 20, 2012 is vacated, and partial judgment rendered herein in favor of Four Corners, LP, and against Sandy and Bruce Iteld in the amount of $16,484, thus reinstating the verdict of the jury as the judgment of the court.
AFFIRMED IN PART, VACATED IN PART AND REMANDED

. Our decision on this partial summary judgment results in our also vacating a post-trial judgment, based upon this summary judgment, which purported to award the full amount of the retainage ($119,196.13) on the first twenty-six pay applications to Four Corners.

. Cost of the work is defined as costs necessarily incurred by Four Corners in the proper performance of the work, and includes contractually defined labor costs, contract costs, materials and equipment incorporated into the completed construction, other materials and equipment, temporary facilities, and miscellaneous costs. The contract also specified that certain costs were not reimbursable, namely expenses of Four Corners' principal office and offices, salaries and other compensation of Four Corners' personnel other than those who were on the job site and the assigned project manager. Similarly, the Itelds were not obligated to reimburse Four Corners for costs due to the fault or gross negligence of Four Corners, or its subcontractors, including "costs for the correction of damaged, defective or nonconforming work, disposal and replacement of materials and equipment incorrectly ordered, or supplied, and making good damage to property not forming part of the work."

. The AIA general conditions discuss applications for payments and provide that Four Comers was to first submit each application, along with all supporting data, to the architect for his review. The architect, within seven days of receiving Four Corners' application, was obligated to either issue a certificate of payment to the Itelds, or notify the parties of his reasons for withholding certification in whole or in part. The AIA general conditions provide that the "issuance of a Certificate for Payment will constitute a representation by the Architect to the Owner, based on the Architect's evaluation of the Work and the data comprising the Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents.” The general conditions further provide that the "issuance of a Certificate for Payment will further constitute a representation that the Contractor is entitled to payment in the amount certified.” Nevertheless, a "certificate for payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents.”

. After final payment, Four Corners was obligated to execute an affidavit of completion, an all bills paid affidavit and a final lien release.

. With respect to the schedule of values, the ■ AIA general conditions provides: "Before the first Application for Payment, Contractor shall submit to the Architect a schedule of values allocated to various portions of the Work, prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor’s Applications for Payment.”

. The jury rejected the Itelds' claim against Jacks Electric for compensation relating to the loss of wine and the generator. The Itelds have not appealed that portion of the jury’s verdict and Jacks Electric has filed no answer to the Itelds’ appeal or a cross-appeal.

. The district court's judgment on retainage, however, did not specify the amount of retain-age to which Four Comers was entitled. The district court attempted to remedy this oversight when it sua sponte amended the judgment, post-trial, to award Four Corners $119,196.13 in retainage with respect to pay applications one through twenty-six.

. Section 14.1.1 authorizes a contractor to terminate a contract for a number of reasons, including the failure of the owner to make payment on a certificate of payment within the time stated in the contract. Further, section 14.1.3 provides that upon termination in accordance with 14.1.1, a contractor is entitled to recover payment for the work from the owner.

. Moreover, given the fact that it had already prevailed on the motion before trial. Four Corners did not put on any evidence touching upon, or elicit testimony concerning, retain-age at trial.

. We have vacated the award of $25,000 in mental anguish damages in favor of the Itelds and have re-instated the jury award of $16,484 to Four Corners, thus reducing the judgment notwithstanding the verdict by $187,096.08.

. Included in this category are the unap-pealed awards for roof repair, extra repairs, and the total amount awarded for negligence attributable to the construction of the HVAC system.

.See Scott v. American Tobacco Co., Inc., 09-0461 (La.App. 4 Cir. 4/23/10), 36 So.3d 1046.